IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER JAMES WALKER,<br><br>    Plaintiff,<br><br> v.<br><br>HIGHMARK BCBSD HEALTH OPTIONS, INC.,<br><br>    Defendant. | 2:20-CV-01975-CCW |

## **MEMORANDUM OPINION AND ORDER**

   Before the Court is Defendant Highmark BCBSD Health Options, Inc.'s partial Motion to Dismiss Plaintiff Christopher James Walker's Complaint. *See* ECF No. 10. Because the Court finds that parties may be liable for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, that occurred prior to the Supreme Court's decision in *Barr v. Am. Ass'n of Political Consultants*, 140 S.Ct. 2335 (2020) ("*AAPC*") Highmark's Motion will be DENIED.

**I.  Background**

   In this case, Mr. Walker claims that, beginning in "early 2020," Highmark placed calls to his cellphone which used a pre-recorded voice message. *See* ECF No. 1-1 at ¶¶ 19–25. According to Mr. Walker, he never consented to such calls and, furthermore, has never even been a Highmark customer. *See id.* at ¶¶ 26–28. Mr. Walker claims, therefore, that these calls violate the TCPA's prohibition on robocalls. *See id.* at ¶ 29; *see also*, 47 U.S.C. § 227, *et seq.* He seeks relief for himself and a proposed class of similarly situated individuals to whom Highmark has placed such calls since November 30, 2016. *See id.* at ¶¶ 31–32.

After removing the case from the Court of Common Pleas for Allegheny County, Pennsylvania, *see* ECF No. 1, Highmark filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), to the extent the Complaint relates to calls placed prior to July 6, 2020. *See* ECF Nos. 10 & 11.  The Supreme Court's decision in *AAPC* invalidated and severed the so-called government debt exception from the TCPA, finding that the exception violated the First Amendment by privileging calls to collect government debt over other calls.  *See* 140 S.Ct. at 2343.  In its Motion to Dismiss, Defendant claims that the *AAPC* decision had the additional effect of rendering the entire TCPA invalid and unenforceable from the time the government debt exception was signed into law by President Obama in 2015 to July 6, 2020, the date of the Supreme Court's judgment in *AAPC*.  *See* ECF No. 11 at 1.  Accordingly, Highmark argues that this Court lacks subject matter jurisdiction over any claims for alleged robocalls placed to Mr. Walker's cellphone (or any putative class member's cellphone) prior to July 6, 2020.  *See id.*

## II.    Standard of Review

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack."  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  A facial challenge contests subject matter jurisdiction without contesting the facts alleged in the complaint, whereas a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  "In sum, a facial attack 'contests the sufficiency of the pleadings'…'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party,* 757 F.3d at 358 (citations omitted).  Importantly, "[i]n reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced

therein and attached thereto, in the light most favorable to the plaintiff.'" *Id*. Here, Highmark's Motion, which contests subject matter jurisdiction "to the extent that the alleged violations occurred pursuant to an unconstitutional statute," presents a facial challenge to the Complaint. ECF No. 11 at 3.

**III.    Discussion**

Originally enacted in 1991, the TCPA, as relevant here, prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii).  More than two decades later, Congress amended § 227(b)(1)(A)(iii) to exempt "call[s]…made solely to collect a debt owed to or guaranteed by the United States." *See AAPC* 140 S.Ct. at 2344–45.  The government debt exception was short-lived, however, because in 2020 six United States Supreme Court Justices agreed that that it "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.* at 2343.  To cure this defect, seven Justices, "[a]pplying traditional severability principles," concluded that "the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id.*

According to Highmark, the Supreme Court's decision in *AAPC* means that the TCPA as a whole was unconstitutional from the day the government debt exception was signed into law until the Supreme Court excised the Constitutional defect, because the government debt exception impermissibly favored the speech of government debt collectors over the speech of robocallers

3

generally. *See* ECF No. 11 at 1. Highmark therefore contends that it cannot be held liable for any alleged robocalls placed before July 6, 2020, the date the *AAPC* decision was handed down. *See id.* at 6. In the wake of *AAPC*, numerous defendants have raised the arguments Highmark makes here but, with very few exceptions, district courts that have considered the issue have instead reached the conclusion Mr. Walker urge us to reach: Because the government debt exception was unconstitutional, it was void when enacted and had no effect on the law's original prohibition on robocalls.[1] *See* ECF No. 24 at 12–14. Mr. Walker argues that this Court should join the courts that have found that defendants like Highmark cannot use *AAPC* to shield themselves from liability for robocalls they made from 2015–2020. *See id.* at 1–2.

In an opinion dealing with a separate, but closely related, issue—whether *AAPC* applies retroactively, thereby making government debt collectors liable for robocalls placed during the 2015–2020 period—Judge Bibas of the Unites States Court of Appeals for the Third Circuit, sitting by designation for the District of Delaware, succinctly summarized the severance principles at play and why Highmark's position is incorrect: "A severance ruling, like any other ruling, says only what the law is and has always been." *Franklin v. Navient, Inc.,* No. 1:17-cv-1640-SB, 2021 U.S. Dist. LEXIS 74265, at *4 (D. Del. Apr. 19, 2021). That is, "federal courts cannot '"change[ ]"' the law'; they can only, in deciding cases, say what a law 'has meant continuously since the date when

---

[1] *See, e.g., Distasio v. Edible Arrangements, LLC,* Case No. 16-cv-00538, 2021 U.S. Dist. LEXIS 18380, at *12 (D. Conn. Feb. 1, 2021); *McCurley v. Royal Sea Cruises, Inc.*, Case No. 17-cv-00986, 2021 U.S. Dist. LEXIS 16403, at *10 (S.D. Cal. Jan. 28, 2021); *Less v. Quest Diagnostics, Inc.*, Case No. 20-cv-2546, 2021 U.S. Dist. LEXIS 14320, at *3 (N.D. Ohio Jan. 26, 2021); *Rieker v. Nat'l Car Cure, LLC*, Case No. 20-cv-5901, 2021 U.S. Dist. LEXIS 9133, at *2 (N.D. Fla. Jan. 5, 2021); *Trujillo v. Free Energy Savs. Co., LLC*, Case No. 19-cv-02072, 2020 U.S. Dist. LEXIS 239730, at *12 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, Case No. 20-7419, 2020 U.S. Dist. LEXIS 237582, at *12 (C.D. Cal. Dec. 17, 2020); *Abramson v. Fed. Ins. Co.*, Case No. 19-cv-02523, 2020 U.S. Dist. LEXIS 232937, at *3-4 (M.D. Fla. Dec. 11, 2020); *Buchanan v. Sullivan*, Case No. 20-cv-301, 2020 U.S. Dist. LEXIS 202519, at *8 (D. Neb. Oct. 30, 2020); *Schmidt v. AmerAssist A/R Sols. Inc.*, Case No. 20-cv-00230, 2020 U.S. Dist. LEXIS 193358, at *11 n.2 (D. Ariz. Oct. 19, 2020); *Canady v. Bridgecrest Acceptance Corp.*, Case No. 19-cv-04738, 2020 U.S. Dist. LEXIS 161629, at *5 (D. Ariz. Sept. 3, 2020); *Lacy v. Comcast Cable Commc'ns, LLC*, Case No. 19-CV-05007, 2020 U.S. Dist. LEXIS 146003, at *1 (W.D. Wash. Aug. 13, 2020); *Komaiko v. Baker Techs., Inc*., Case No. 19-cv-03795, 2020 U.S. Dist. LEXIS 143953, at *5 (N.D. Cal. Aug. 11, 2020); *Burton v. Fundmerica, Inc*., Case No. 19-cv-119, 2020 U.S. Dist. LEXIS 139299, at *1 n.2 (D. Neb. Aug. 5, 2020).

it became law.'" *Id.* at \*5 (quoting *Rivers v. Roadway Express,* 511 U.S. 298, 313 n.12 (1994)) (alteration original).  Thus, "[w]hen a court finds a law unconstitutional, it finds that it is 'void, and is as no law' from the day it is passed…It never took effect as written." *Id.* (quoting *Ex parte Siebold*, 100 U.S. 371, 376 (1879)).  Having found the government debt exception unconstitutional, Judge Bibas reasoned, the Supreme Court in *AAPC* was therefore faced with a choice: "[t]o cure the content discrimination, either the exception was void (so the Act covered all robocalls) or the exception became the rule (so it covered none)." *Id.* at \*6.  Relying on the TCPA's severability clause, seven Justices in *AAPC* agreed with the first option, i.e., that the correct outcome was for the government debt exception to be excised from the statute, leaving the broader, original robocall restriction in place.  *See id.* at \*6 (noting "if the exception was void the day it was passed, and Congress's fallback rule was to nix it, then it never took effect.") (citing *AAPC*, 140 S.Ct. at 2352).

With *AAPC* and the applicable severance principles thus properly framed, the flaw at the heart of Highmark's argument—the incorrect premise that the *AAPC* Court finding the government debt exception unconstitutional means that the TCPA was wholly unconstitutional from 2015–2020—becomes clear.  Indeed, Justice Kavanaugh, writing for the plurality in *AAPC*, specifically avoided any such conclusion, instead finding that under long-standing severance principles "the Court has treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *AAPC*, 140 S.Ct. at 2353 (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U. S. 515, 526–27 (1929)).  In other words, because the government debt collection exception was unconstitutional from its inception, it never had any effect on the TCPA, and parties may be liable for violations of the TCPA during the time the government debt exception was on the books.  *See, e.g., Boisvert v. Carnival Corp.*, Case No: 8:20-cv-2076-30SPF, 2021 U.S. Dist. LEXIS 47397, at \*4 (M.D. Fla.

Mar. 12, 2021) (collecting cases) ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-*AAPC*"). Thus, Highmark's point that we "must consider the constitutionality of the statute at the time the violation occurred," ECF No. 25 at 5, is correct, but unavailing: Because the government debt exception was a nullity, the statute in question is the pre-2015 version of the TCPA, which "'has been upheld as a valid time, place, or manner restriction by several courts throughout the country.'" *Perrong v. Liberty Power Corp., LLC*, 411 F.Supp.3d 258, 269 (D. Del. 2019) (quoting *Woods v. Santander Consumer USA Inc.*, Case No.: 2:14-cv-02104-MHH, 2017 U.S. Dist. LEXIS 47256, at *9 n.6 (N.D. Ala. Mar. 30, 2017)).

Finally, Highmark argues that *AAPC* cannot be applied retroactively without running afoul of the same unequal treatment issues the *AAPC* Court sought to remedy. *See* ECF No. 25 at 2. But, "[b]ecause Supreme Court decisions clarify what the law 'ha[s] always meant,' their rulings apply to all open cases, even those whose facts predate the ruling." *Franklin,* 2021 U.S. Dist. LEXIS 74265, at *5 (quoting *Rivers,* 511 U.S. at 313 n.12); *see also Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."). Applying these principles, Judge Bibas concluded that government debt collectors could be held liable for pre-*AAPC* violations of the TCPA. *See Franklin,* 2021 U.S. Dist. LEXIS 74265 at *1–2, 10. To be sure, and as Judge Bibas recognized in *Franklin*, there are exceptions to this rule. *See id.* at *12–14 (discussing rules against retroactive application of criminal and quasi-criminal penalties, like punitive damages). But, while

due process and fair notice principles may prohibit imposing punitive damages on government debt collectors for pre-*AAPC* violations of the TCPA, *see id.* at *2, the upshot of the Supreme Court's decision for our purposes is that all robocalls, including those made by government debt collectors, "[are] now treated equally." *AAPC,* 140 S.Ct. at 2344.

Because the Supreme Court in *AAPC* severed the government debt exception, rather than invalidating the TCPA's robocall restriction in its entirety, parties may be liable for violations during the 2015–2020 period and, therefore, Highmark's Motion will be denied.

### IV.     Conclusion

For the foregoing reasons, Highmark's Motion is hereby DENIED. Highmark shall respond to Plaintiff's Complaint on or before May 28, 2021.

DATED this 14th day of May, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record