**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTOPHER JAMES WALKER,** on behalf of himself and all others similarly situated, | Civil Case No.: 20-cv-1975 |
| | Hon. Christy Criswell Wiegand |
| **Plaintiff,** | |
| **v.** | |
| **HIGHMARK BCBSD HEALTH OPTIONS, INC.; COTIVITI, INC.** | |
| **Defendant.** | |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COTIVITI, INC.'S MOTION TO DISMISS**</u>

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................. 2

III.   DISCUSSION ......................................................................................................... 3

   A)   Personal Jurisdiction ........................................................................................ 3

     1.  Eliza's contacts with Pennsylvania may be attributed to Defendant Cotiviti. ................. 3

     2.  Cotiviti's contacts with Pennsylvania were directly related to the lawsuit here and were otherwise extensive. ................................................................................... 5

     3.  Plaintiff's claims arise from and relate to Cotiviti's contacts with Pennsylvania. .......... 6

     4.  Fair play and substantial justice support jurisdiction here. ............................................. 6

   B)   Venue ............................................................................................................... 9

     1.  Venue is proper under 28 U.S.C. § 1441. ....................................................................... 9

     2.  Venue would also be proper under 28 U.S.C. § 1391 .................................................... 11

       i.    Defendant Cotiviti's Declaration does not rebut Plaintiff's allegations about the substantial events and omissions occurring in and from this District. .............................. 12

       ii.   A "substantial part of the events or omissions" giving rise to Plaintiff's claim occurred in the Western District. ....................................................................... 13

   C)   Defendant Highmark and Defendant Cotiviti's own misrepresentations and omissions prevented Plaintiff from suing Eliza Corporation before it was absorbed into Cotiviti. 16

   CONCLUSION .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acme Mkts., Inc. v. Dunkirk Ice Cream Co.*
  2000 Phila Ct. Com. Pl. LEXIS 49 (Ct. Com. Pl. Phil. Sept. 18, 2000) .................................... 12

*Asahi Metal Indus. Co. v. Superior Court of Cal.*
  480 U.S. 102 (1987) ........................................................................................................... 7

*Berg Chilling Sys. v. Hull Corp.*
  435 F.3d 455 (3d Cir. 2006) .................................................................................................. 4

*Bockman v. First Am. Mktg. Corp.*
  459 Fed. Appx. 157 (3d Cir. 2012) ........................................................................................ 12

*Carter v. American Bus. Lines, Inc.*
  169 F. Supp. 460 (D. Neb. 1959) .......................................................................................... 10

*Cottman v. Transmission Sys., Inc. v. Martino*
  36 F.3d 291 (3d Cir. 1994) .................................................................................................. 11

*Digital Merchant Sys. v. Oglesby*
  1999 U.S. Dist. LEXIS 18824 (N.D. Ill. Nov. 30, 1999) .......................................................... 10

*Fabio v. Diversified Consultants, Inc.*
  2014 U.S. Dist. LEXIS 24669 (W.D. Wisc. Feb. 25, 2014) ....................................................... 6

*Fitzhenry v. Guardian Prot. Servs.*
  2016 U.S. Dist. LEXIS 155340 (W.D. Pa. Nov. 9, 2016) .......................................................... 15

*Golan v. Veritas Entm't, LLC*
  2017 U.S. Dist. LEXIS 103385 (E.D. Mo. July 5, 2017) ........................................................... 8

*Henning v. Suarez Corp. Indus.*
  713 F. Supp. 2d 459 (E.D. Pa. 2010) ..................................................................................... 12

*Henry v. Hallahn*
  2014 U.S. Dist. LEXIS 183185 (E.D. Tex. June 16, 2014) ........................................................ 10

*Howard v. JJ&P Hotels, LLC*
  2015 U.S. Dist. LEXIS 174429 (N.D. Tex. Nov. 23, 2015) ....................................................... 10

*Leonetti's Frozen Foods v. Crew, Inc.*
  140 F. Supp. 3d 388 (E.D. Pa. 2015) ..................................................................................... 10

*Maniscalco v. Brother Int'l (USA) Corp.*
  709 F.3d 202 (3d Cir. 2013) .................................................................................................. 7

*Myers v. Am. Dental Ass'n*
  695 F.2d 716 (3d Cir. 1982) ............................................................................ 11

*N. Am. Lubricants Co. v. Terry*
  2011 U.S. Dist. LEXIS 133672 (E.D. Cal. Nov. 18, 2011) ......................................... 17

*Patin v. Thorroughbred Power Boats, Inc.*
  294 F.3d 640 (5th Cir. 2002) ............................................................................ 4

*Penco Prods. v. WEC Mfg., LLC*
  974 F. Supp. 2d 740 (E.D. Pa. 2013) ............................................................. 4, 12

*Pennzoil Prods. Co. v. Colelli & Assocs.*
  149 F.3d 197 (3d Cir. 1998) ......................................................................... 6, 7

*Pfizer Inc. v. Mylan Inc.*
  201 F. Supp. 3d 483 (D. Del. 2016) ................................................................... 15

*Polizzi v. Cowles Magazines, Inc.*
  345 U.S. 663 (1953) ........................................................................................ 9

*Post Acute Med., LLC v. Leblanc*
  826 Fed. Appx. 163 (3d Cir. Sept. 14, 2020) ................................................... 11, 16

*PrimePay, LLC v. Prime Trust, LLC*
  2021 U.S. Dist. LEXIS 169700 (E.D. Pa. Sept. 8, 2021) ........................................... 12

*Russell v. Kronos Inc.*
  2019 U.S. Dist. LEXIS 146865 (N.. Cal. Aug. 28, 2019) ........................................... 7

*Samgel, Inc. v. Firebird Int'l, Inc.*
  1993 U.S. Dist. LEXIS 4355 (N.D. Ill. Apr. 6 1993) ............................................... 12

*Simmers v. American Cyanamid Corp.*
  576 A.2d 376 (Pa Super. 1990) .......................................................................... 4

*Superior Precast, Inc. v. Safeco Ins. Co. of Am.*
  71 F. Supp. 2d 438 (E.D. Pa. 1999) ............................................................. 12, 16

**Statutes**

28 U.S.C. § 1390(c) ........................................................................................ 10

28 U.S.C. § 1441 ......................................................................................... 9, 10

47 U.S.C. § 227(b) .......................................................................................... 2

## I.    INTRODUCTION

Defendant Highmark contracted with Eliza Corporation ("Eliza") to provide "automated, multichannel communication programs" to Highmark members. As part of this contract and on the instruction of Defendant Highmark, Eliza placed more than 150,000 calls to more than 7,000 unique telephone numbers[1] with Pennsylvania area codes.[2] Some of these calls, including those to Plaintiff, originated from Eliza's data center in Pennsylvania. Twelve of Eliza's calls to Plaintiff used a Pennsylvania area code. So intertwined were Defendant Highmark and Eliza when it came to these calls that Defendant Highmark's initial disclosures stated that Eliza could only be contacted through Defendant Highmark's counsel. As pled, and as neither Defendant Cotiviti nor Defendant Highmark have disputed, Defendant Highmark's operations, contracts, and/or decisions that led to the calls at issue were conducted through Pittsburgh.

In mid-2021, Defendant Cotiviti, a Delaware company with its principal place of business in Utah and at least one office in Pennsylvania, acquired Eliza. The companies operated as separate entities until December 31, 2021, at which point Eliza fully merged into Defendant Cotiviti. Cotiviti now holds the contract with Defendant Highmark and now owns and operates the Pennsylvania data center from which the illegal calls were made.

Despite this, Defendant Cotiviti claims that Pennsylvania cannot exercise personal jurisdiction over it. To pull this off, Cotiviti claims that *it* did nothing—Eliza did it all. It claims Eliza, not Cotiviti, made the calls to and from Pennsylvania. It claims that Eliza, not Cotiviti,

---

[1] This analysis is ongoing, as there are questions about the completeness of Defendant Highmark's call production. If anything, this number will grow.

[2] 215, 223, 267, 272, 412, 445, 484, 570, 582, 610, 717, 724, 814, 878.

contracted with, acted on behalf of, and took direction from Defendant Highmark. It claims that Eliza, not Cotiviti, called Plaintiff.

But Eliza *is* Cotiviti. Under Pennsylvania law, the jurisdictional contacts of a merged entity are imputed to the successor. Eliza's contacts are now Cotiviti's contacts. For jurisdictional purposes, Defendant Cotiviti is the one that made the calls to Plaintiff from Pennsylvania. Defendant Cotiviti is the one that entered the contract with, acted on behalf of, took direction from, and pretended to be Defendant Highmark. Defendant Cotiviti is the one that made more than 150,000 calls to Pennsylvania telephone numbers.

Defendant's venue argument fares no better. Venue here cannot be improper under § 1391 because § 1441—not section § 1391—exclusively governs venue in removed actions. Even under § 1391, however, venue is proper. Not a single call to Plaintiff or putative class members would have happened *but for* the contract with Defendant Highmark which is indisputably a corporation in this District. Defendant Highmark also controlled, directed, and instructed Defendant Cotiviti from this District on the who, what, when, where and how of each call at issue. As such, a "substantial" part of the events giving rise to Plaintiff's claims occurred in this District.

## II.    FACTUAL BACKGROUND

On November 30, 2020, Plaintiff Christopher Walker filed a complaint in the Court of Common Pleas, Allegheny County, Pennsylvania, alleging that, throughout 2020, Defendant Highmark repeatedly called his cell phone using a prerecorded or artificial voice. [Dkt. 71, Second Am. Compl. ("SAC") ¶¶ 16-25.] The calls appeared to be for someone else with whom Plaintiff has no known association, and Plaintiff has never been Defendant's customer. [*Id.* at ¶¶ 25-32.] Accordingly, the prerecorded calls were made to Plaintiff without his consent and violated the Telephone Consumer Protection Act's ("TCPA"), 47 U.S.C. § 227(b), prohibition on prerecorded

telephone calls to cell phones without the consent of the recipient. The TCPA provides for statutory damages of $500 to $1500 per call.

Shortly thereafter, Defendant Highmark removed the case to this Court. The Court subsequently denied Plaintiff's Motion to Remand on Article III standing grounds, with the Court finding Article III standing present on the face of the complaint. [Dkt. 22.] On January 26, 2021, Defendant Highmark moved to dismiss. [Dkt. 10.] The Court denied this motion on May 14, 2021. [Dkt. 28.] After initial waves of discovery and an extension of deadlines, Plaintiff amended his complaint to add Defendant Cotiviti, Inc. on December 1, 2021. [Dkt. 71.] After an extension of time to respond, on January 28, Defendant Cotiviti filed the instant Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. [Dkt. 78.]

## III.   DISCUSSION

### A) <u>Personal Jurisdiction</u>

Under Fed. R. Civ. P. 4(k), a district court "exercises jurisdiction according to the law of the state where it sits". Pennsylvania's long-arm statute permits jurisdiction "based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). This collapses the jurisdictional inquiry into one step: "whether, under the Due Process Clause, the defendant has 'certain minimum contacts with…[Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

### 1.   **Eliza's contacts with Pennsylvania may be attributed to Defendant Cotiviti.**

The crux of Defendant Cotiviti's motion is that any contacts or actions sufficient for personal jurisdiction were Eliza's and happened while Eliza was a separate entity, and thus jurisdiction over Defendant Cotiviti is improper. But "[u]nder Pennsylvania law, the act of a

3

predecessor corporation may be attributed to its successor for purposes of determining whether jurisdiction over the successor is proper." *Penco Prods. v. WEC Mfg., LLC*, 974 F. Supp. 2d 740, 749 (E.D. Pa. 2013); *see also, e.g.*, *Simmers v. American Cyanamid Corp.*, 576 A.2d 376, 381 (Pa Super. 1990) ("We … hold that the predecessor's activities may be attributed to the success for jurisdictional purposes."); *Patin v. Thorroughbred Power Boats, Inc.*, 294 F.3d 640, 652 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.").

This principle stems from "the general rule governing successor liability in Pennsylvania" that "liability attaches to the successor when … the transaction amounts to a consolidation or merger." *Simmers*, 576 A.2d at 482. In evaluating this doctrine courts look beyond the form of an asset sale to determine whether there has been, in substance, a merger or consolidation. *See, e.g. Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 465 (3d Cir. 2006). While Defendant Cotiviti does not provide extensive details regarding the nature of the transaction through which Eliza became part of Cotiviti, it repeatedly refers to it as a merger. [Dkt. 79-1, Flieger Decl., ¶ 5 ("By December 31, 2021, through a series of acquisitions and corporate restructuring, Eliza fully merged into Cotiviti); ¶ 6 ("Before Eliza merged into Cotiviti…"; "As a result of the merger of Eliza into Cotiviti…")]; [Def.'s Brief, Dkt. 79, p. 11 ("Prior to being acquired by and merged into Cotiviti, one aspect of Eliza's business…")].

Also important is that Defendant Cotiviti and Eliza merged well *after* the point at which Defendant Cotiviti knew Eliza's conduct was the subject of a lawsuit for which Eliza might be liable. Defendant Cotiviti was not only named in the lawsuit on December 1, 2021 for conduct it

now attributes to Eliza, but it had previously participated in providing Defendant Highmark thousands of pages of documents relevant to the instant matter.

Accordingly, because Eliza's contacts may be imputed to Defendant Cotiviti for the purposes of jurisdiction, the question is whether Eliza's contacts with Pennsylvania permit the exercise of personal jurisdiction over it consistent with Due Process.[3] As set forth below, and in Defendant's own Motion, they do, making personal jurisdiction proper over Defendant Cotiviti.

2. **Cotiviti's contacts with Pennsylvania were directly related to the lawsuit here and were otherwise extensive.**

Defendant Cotiviti gives away the game in its declaration when it states that many of the calls at issue, including those to Plaintiff, were made from Defendant's Pennsylvania data center. [Flieger Decl., ¶ 6.] While this alone is sufficient for personal jurisdiction, Defendant Cotiviti's contacts with Pennsylvania were extensive even beyond making the calls from its Pennsylvania data center. Defendant Cotiviti contracted with Defendant Highmark, a corporation that is indisputably headquartered in Pennsylvania. This contract required Defendant Cotiviti to make telephone calls to telephone numbers ostensibly belonging to Defendant Highmark's members. As set forth in more detail in the venue section, Defendant Highmark directed and controlled Defendant Cotiviti from within Pennsylvania. As a result of this contract and Defendant Highmark's direction, Defendant Cotiviti made more than 150,000 telephone calls to more than 7,000 unique telephone numbers. Glapion Decl., ¶ __. Most of the calls to Plaintiff (and presumably many calls to putative class members) used Pennsylvania area codes. Exhibit A, Pl.'s Response to Interrogatory 2. These contacts satisfy the "minimum contacts" threshold.

---

[3] For convenience and unless otherwise specified, the remainder of this memorandum will refer to Eliza's contacts and actions at issue as "Defendant Cotiviti's" contacts or actions.

3. **Plaintiff's claims arise from and relate to Cotiviti's contacts with Pennsylvania.**

Defendant Cotiviti essentially concedes that Plaintiff's claims arise from its contacts with Pennsylvania. As it writes in its brief, it was "Eliza that had a contract with Highmark to make calls on behalf of Highmark", and "it was Eliza … that would have made the calls to Plaintiff on behalf of Highmark." [Def.'s Memo, Dkt. 79, p. 12.] But because what Eliza did is attributed to Defendant Cotiviti, one could substitute in "Cotiviti" for "Eliza" in those two sentences. Defendant's declaration is even more direct, acknowledging that at least some of the calls it made on Highmark's behalf, including the calls to the phone number belonging to Plaintiff, were made from Defendant's data center in Bethlehem, Pennsylvania. [Flieger Decl., ¶ 6.]  Defendant Cotiviti acknowledges that Plaintiff's claim based on calls received from this data center would "arise out of or relate to Cotiviti's purposeful conduct in Pennsylvania" if Defendant Cotiviti owned the data center when that data center made these calls. [Def.'s Memo, Dkt. 79, p. 12]. For the purposes of this analysis, however, it *did* own the data center when it made the calls. Accordingly, Plaintiff's claims arise from Defendant Cotiviti's contacts with Pennsylvania.

It perhaps goes without saying that courts have found that illegal telephone calls emanating from within a state to be sufficient to support the exercise of specific personal jurisdiction related to those calls. *See, e.g.*, *Fabio v. Diversified Consultants, Inc.*, 2014 U.S. Dist. LEXIS 24669, *7 (W.D. Wisc. Feb. 25, 2014).

4. **Fair play and substantial justice support jurisdiction here.**

"After making a determination with regard to minimum contacts, a court has the option of evaluating whether exercising jurisdiction comports with notions of 'fair play and substantial justice.'" *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 205-06 (3d Cir. 1998). It is "rare" that notions of 'fair play and substantial justice' "defeat the reasonableness of jurisdiction even

[though] defendant has purposefully engaged in forum activities." *Id.* at 207 (citing and quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 116 (1987) (Brennan, J., concurring). Nevertheless, the factors to be considered in the "fairness" inquiry are: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive policies." *Pennzoil*, 149 F.3d at 205-06.

**Burden**: Defendant does not claim it would be burdensome to litigate this case in Pennsylvania, nor could it. Defendant has provided thousands of pages of documents to Defendant Highmark for production in this matter. Further, while it is true that Defendant Cotiviti "is not incorporated" in Pennsylvania, it not only presently maintains two offices here—including the data center from which the offending calls were made—but registered to do business in Pennsylvania on March 16, 2021. Exhibit B.

**Pennsylvania's Interest**: Defendant claims that Pennsylvania has no interest in Plaintiff's claim against Defendant Cotiviti. As established, however, at least some of the illegal calls at issue emanated from within Pennsylvania. [Flieger Decl., ¶ 6.] To find Pennsylvania has "no interest" in claims relating to that conduct would be to find that Pennsylvania has "no interest" in regulating illegal conduct emanating from within its borders. This is not true. *Cf., e.g.*, *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 210-11 (3d Cir. 2013) (noting a state "has an interest in deterring misconduct by corporations headquartered within its borders"); *see also, e.g. Russell v. Kronos Inc.*, 2019 U.S. Dist. LEXIS 146865, *5 (N.. Cal. Aug. 28, 2019) (noting California's interest in policing or regulating misconduct within its borders).

**Plaintiff's Interest**: Defendant also claims that Plaintiff has no interest in adjudicating this dispute in Pennsylvania. This too is false on its face. Plaintiff received illegal calls from a Pennsylvania data center using Pennsylvania numbers on behalf of and at the instruction of a Pennsylvania company by a company pretending to be that Pennsylvania company.

**Efficient Resolution**: Defendant Cotiviti's brief implicitly concedes efficiency of continuing the litigation in Pennsylvania. In arguing against transfer (and in favor of dismissal), it writes that "Plaintiff has been litigating its putative class action claims against Highmark for over a year, Plaintiff and Highmark have engaged in extensive discovery, including class discovery, and the Court has already decided substantive pleadings motions and discovery motions. The Court has also already set (and continued) trial and pre-trial deadlines." [Def.'s Brief, Dkt. 79, p. 17.]

On top of this, the Court should consider the messy procedure that would come from forcing Plaintiff to litigate his class claims against Defendant Cotiviti in one forum and his class claims against Defendant Highmark here. If we assume, as all Parties seem to agree, that it was Eliza (now Cotiviti) that made the calls on behalf of Defendant Highmark, Plaintiff would potentially be forced to litigate interrelated and nearly identical claims twice: once against Defendant Highmark here for directing Defendant Cotiviti to make the calls, and once against Defendant Cotiviti elsewhere for making the calls. Plaintiff would be litigating joint and several liability in two separate cases in potentially two separate jurisdictions. *See Golan v. Veritas Entm't, LLC*, 2017 U.S. Dist. LEXIS 103385, *26 (E.D. Mo. July 5, 2017) (noting the TCPA permits joint and several liability and collecting cases).

Beyond these factors, Defendant's brief generally implies that it is being unfairly dragged into a case for actions with which it had nothing to do. Yet, as mentioned, Defendant was aware of the allegations stemming from the conduct it now blames on Eliza at *least* as far back as October

6, 2021, when Plaintiff reached out to Defendant Cotiviti's General Counsel to suggest this possibility. Exhibit C. It was also aware of the addition of Cotiviti as a Defendant for the conduct it now blames on Eliza on December 1, 2021, when Plaintiff emailed the complaint to Defendant Cotiviti's General Counsel. Exhibit D. Despite that, it still chose to proceed with the merger.

Finally, Defendant Cotiviti did not act as itself on the calls. On all calls, the automated voice on the calls identified the call as being from Defendant Highmark. [SAC, ¶¶ 21-30.] Any provided call back number rang to what appeared to be Defendant Highmark. For all purposes and at all times relevant here, Defendant Cotiviti *pretended to be* Defendant Highmark, indisputably a Pennsylvania company. [*Id.*] A caller making illegal calls from Pennsylvania on behalf of a Pennsylvania company while pretending to be that Pennsylvania company can certainly anticipate being haled into Court in Pennsylvania for those calls.

Accordingly, "fair play and substantial justice" support the exercise of personal jurisdiction over Defendant Cotiviti.

**B) Venue[4]**

  1. **Venue is proper under 28 U.S.C. § 1441.**

This action was removed from the Court of Common Pleas, Allegheny County on December 21, 2020. [Dkt. 1]. Venue in removed actions is governed by 28 U.S.C. § 1441, which provides that venue in removed actions is proper in the district embracing the place where such action is pending at the time of removal. 28 U.S.C. § 1441(a); *see also, e.g.*, *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) (§ 1441(a) and not § 1391 governs venue where a case

---

[4] Defendant does not request a transfer of venue and provides numerous reasons why it believes a transfer would be inappropriate. As such, Plaintiff will not discuss in this memorandum the elements to be considered in deciding whether to transfer.

has been removed from state to federal court); *Leonetti's Frozen Foods v. Crew, Inc.*, 140 F. Supp. 3d 388, 393 (E.D. Pa. 2015) (finding § 1441(a) exclusively controls venue in removed cases, and § 1391 factors are not relevant in a removed case). Venue is therefore indisputably *proper* here, and Defendant Highmark concedes as much. [Dkt. 74, Answer to SAC, ¶ 3.] For this reason alone, Defendant Cotiviti's motion to dismiss for "improper" venue should be rejected.

Defendant does not brief § 1441, focusing its efforts exclusively on whether venue is proper under § 1391. But there is no exception to § 1441 for defendants added after removal. *Howard v. JJ&P Hotels, LLC*, 2015 U.S. Dist. LEXIS 174429, *7 (N.D. Tex. Nov. 23, 2015) (rejecting "an exception to the rule that Section 1441(a) governs venue in removed actions, under which, if a plaintiff files an amended complaint adding new defendants after removal, venue must be proper with respect to the new defendants under the applicable general or special venue provision."); *Henry v. Hallahn*, 2014 U.S. Dist. LEXIS 183185, *3-4 (E.D. Tex. June 16, 2014); *Fawick Corp. v. Alfa Export Corp.*, 135 F. Supp. 108, 109 (S.D.N.Y. 1955).

There are a couple of cases that have gone the other way. *See Carter v. American Bus. Lines, Inc.*, 169 F. Supp. 460, 469 (D. Neb. 1959); *Digital Merchant Sys. v. Oglesby*, 1999 U.S. Dist. LEXIS 18824, *15 (N.D. Ill. Nov. 30, 1999). Importantly, both cases were decided prior to the Jurisdiction and Venue Clarification Act of 2011, which made clear that § 1391 is inapplicable to removed actions. 28 U.S.C. § 1390(c).

In addition, both cases relied on a purported inequity that would come from disallowing a venue defense because another defendant removed it.[5] But this is not so. A later-added defendant

---

[5] This issue is not unique to the circumstances here. Courts have ruled in tangentially related circumstances that, for example, that when an action is filed in state court against an original defendant who could remove but does not, and an additional defendant is added after the expiration of the original removal period, the newly added defendant cannot remove. *See, e.g.*, *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986).

can still raise a venue defense in the form of seeking transfer, they just cannot succeed on a defense that venue is *improper* and the case must be dismissed. Just as the propriety of venue under § 1391(b) does not change on a per-defendant basis (focusing instead on the claim itself), the propriety of venue under § 1441 need not change on a per-defendant basis. *Cf Cottman v. Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (In the context of § 1391, "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'"). Defendant, however, expressly rejects transfer, and argues persuasively against one. [Def.'s Brief, pp. 16-17.]

### 2. **Venue would also be proper under 28 U.S.C. § 1391.**

Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" As noted, venue under § 1391(b)(2) is action specific, not defendant specific. What this means is that so long as a substantial part of the events or omissions giving rise to *the claim* occurred in a district, venue is proper in that district even if one of the defendant's contributions to those events or omissions within the district was minimal. *See Cottman*, 36 F.3d at 294. "In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Id.* at 295. "The moving party has the burden of proving improper venue." *Post Acute Med., LLC v. Leblanc*, 826 Fed. Appx. 163, 166 (3d Cir. Sept. 14, 2020) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982)).

 "A court considering [§ 1391(b)(2)] is not required to determine the 'best' forum or the forum with the most substantial events … rather more than one federal district may be the site of substantial events or omissions and therefore more than one federal district may be a proper venue

in a given case." *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 444 (E.D. Pa. 1999).

While cases discussing the attribution of acts of a predecessor corporation to a successor corporation in a merger in the venue-exclusive context are few, as a practical matter, there is little reason to treat this issue differently. At least one court in this circuit has declined to transfer venue using the same successor-liability analysis for personal jurisdiction. *See Penco Prods.*, 974 F. Supp. 2d at 753, n. 75 (declining to transfer venue after finding a predecessor's contacts with a forum could be imputed to the successor). Some state courts have held similarly (though interpreting state venue law). *See, e.g.*, *Acme Mkts., Inc. v. Dunkirk Ice Cream Co.*, 2000 Phila Ct. Com. Pl. LEXIS 49, *10-14 (Ct. Com. Pl. Phil. Sept. 18, 2000) (finding no distinction between analyzing predecessor acts for personal jurisdiction and for venue). Others hold that the legal principles governing Rule 12(b)(2) motions are applicable to 12(b)(3) motions. *See, e.g.*, *Samgel, Inc. v. Firebird Int'l, Inc.*, 1993 U.S. Dist. LEXIS 4355, *6-7 (N.D. Ill. Apr. 6 1993).

Finally, in deciding a motion to dismiss under 12(b)(3), courts must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 Fed. Appx. 157, 158 n.1 (3d Cir. 2012); *see also PrimePay, LLC v. Prime Trust, LLC*, 2021 U.S. Dist. LEXIS 169700, *2 (E.D. Pa. Sept. 8, 2021). The Court must also "draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor." *Henning v. Suarez Corp. Indus.*, 713 F. Supp. 2d 459, 462 (E.D. Pa. 2010).

The unrebutted allegations of Plaintiff's complaint and all reasonable inferences drawn therefrom are sufficient to establish venue in the Western District of Pennsylvania.

        i.   <u>Defendant Cotiviti's declaration does not rebut Plaintiff's allegations about the substantial events and omissions occurring in and from this District.</u>

Defendant Cotiviti's submitted declaration in this matter is extremely narrow. It is focused exclusively on drawing a distinction between Eliza's actions and contacts and its own. [Flieger Decl.] The allegations about the contacts and actions themselves are wholly unrebutted. In other words, Defendant's declaration attempts to shift blame for the actions giving rise to the complaint, but does not rebut the existence or pled descriptions of the actions themselves.

As established throughout this brief, Defendant Cotiviti's proposed distinction between it and Eliza is one without a difference. With no such distinction, Plaintiff's unrebutted allegations about Defendant Cotiviti's actions (through Eliza) and its relationship with Defendant Highmark must be taken as true.

  ii. <u>A "substantial part of the events or omissions" giving rise to Plaintiff's claim occurred in the Western District.</u>

Though Defendant suggests that the Court focus on the calls alone, the calls alone are not the entire dispute. Had Plaintiff filed a complaint alleging that Defendant made calls to his phone number, with nothing more, it would have been (correctly) dismissed under Rule 12(b)(6). Instead, the relevant TCPA claim requires Defendant to have made 1) a call 2) using a prerecorded or artificial voice 3) without the consent of the recipient. While it is true that the actual *call* is the final act that triggers liability, *everything* else occurred in or emanated from this District.

For starters, none of calls to Plaintiff and putative class members would have happened but for the contractual agreement between Defendant Cotiviti and Defendant Highmark. In this contract, Defendant Highmark explicitly lists itself as having a principal place of business in Pittsburgh. Exhibit E. Defendant Highmark's website says the same, noting that "[o]ur corporate headquarters in Pittsburgh,[sic] is a proud reflection of our commitment to the community."[6]

---

[6] https://www.highmarkhealth.org/hmk/about/headquarters.shtml, *accessed* February 16, 2022.

But it is not just the existence of the contract that makes venue proper, it is what this contract enabled and how Defendant Highmark controlled Defendant Cotiviti through this contract vis-à-vis the calls at issue. Defendant Highmark provided Defendant Cotiviti Plaintiff's (reassigned, wrong) telephone number to be called. [SAC at ¶ 18.] Had Defendant Highmark scrubbed for wrong or re-assigned numbers prior to turning them over to Defendant Cotiviti, the calls would not have happened. Defendant Highmark failed to properly honor "do not call" and wrong number requests. [*Id.* at ¶ 22.] Defendant Highmark provided Defendant Cotiviti details on when and in what circumstances numbers should be called. [*Id.* at ¶ 19.] Defendant Highmark created or assisted in creating the scripts to be used on the calls. [*Id.* at ¶ 20.] Defendant Cotiviti made the calls "for the benefit of and at the request of Defendant Highmark." [*Id.* at ¶¶ 17, 27, 29.] Defendant Highmark permitted Defendant Cotiviti to use Defendant Highmark's tradenames and to provide call back numbers that appear to ring back directly to Defendant Highmark. [*Id.* at ¶ 21.] On all calls, Defendant Cotiviti pretended to be Defendant Highmark. [*Id.* at ¶¶ 26-30.]

In other words, the failures necessary for Plaintiff's claim (e.g. not scrubbing for re-assigned numbers or honoring/documenting wrong number or do-not-call requests); the decisions and instructions on "who to call" necessary for Plaintiff's claim (e.g. to call re-assigned numbers and numbers on the do-not-call list); and  the decisions and instructions on "how to call" necessary to Plaintiff's claim (e.g. using prerecorded/artificial voices with a script that identified the calls as being from Defendant Highmark) occurred in or emanated from this District. While the calls themselves appear to have come from outside of this District, they were simply the culmination of these intra-District decisions and instructions.

As further pled, all of Defendants "operations, contracts, and/or decisions that led to the calls at issue here"—including the above—took place in Allegheny County [*Id.* at ¶ 9.] For its part,

at no point throughout this litigation has Defendant Highmark contested venue. To the extent any inference can be drawn from this waiver, it should be drawn in Plaintiff's favor.

Taking Plaintiff's allegations as true, venue is appropriate here. The actions above are more than sufficiently "substantial". Further, drawing all reasonable inferences in Plaintiff's favor, the above actions occurred in or emanated from this District.[7]

This is more than the barebones "contract" nexus for venue that Defendant Cotiviti's cited case rejected. *Fitzhenry v. Guardian Prot. Servs.*, 2016 U.S. Dist. LEXIS 155340 (W.D. Pa. Nov. 9, 2016). As the *Fitzhenry* court wrote, "[w]hen material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, 'substantial'[.]" *Id.* at *4-5. The court acknowledged that a "close nexus" sufficient for venue could be found when a principal directs an agent to make the illegal calls. *See id.* at *5-6 (agreeing with a decision that "the 'close nexus' requirement in vicarious liability cases is only met if the principal explicitly instructs the agent to commit the underlying alleged action."); *Cf. Pfizer Inc. v. Mylan Inc.*, 201 F. Supp. 3d 483, 489-90 (D. Del. 2016) ("[A]cts by the agent which were directed by the principal may provide the basis for jurisdiction."). The *Fitzhenry* court found this concept inapplicable to the case before it because there, the principal had denied instructing the agent to make the calls at issue. *Id.*

---

[7] Venue is also proper in any "judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located." 28 U.S.C. § 1391(b)(1). "[A]n entity with the capacity to … be sued … shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Defendant Cotiviti's extensive relationship with Defendant Highmark regarding the illegal calls would subject Defendant Cotiviti to personal jurisdiction here.

Defendant Highmark has not denied instructing Defendant Cotiviti to make the calls at issue. To the contrary, it specifically identified Defendant Cotiviti as the entity that made calls on its behalf. Exhibit F, Def.'s October 15 Response to Interrogatory 4.

Notably, even if the above is insufficient to affirmatively establish that venue is proper, that is not Plaintiff's burden. Defendant Cotiviti has the burden to prove that venue is improper and it has has failed to meet that burden. *See Post Acute Med., LLC*, 826 Fed. Appx. at 166. At most it established that venue might be proper elsewhere, but that does not mean venue is not proper here. *Superior Precast, Inc.*, 71 F. Supp. 2d at 444. Its only arguments against venue being proper here are that none of the calls were made from or received in the Western District. [Def.'s Brief, pp. 15-16.] It does nothing to address the rest of the acts and omissions, outlined above and pled in the Second Amended Complaint, that emanated from or occurred in the Western District.

C) **Defendant Highmark and Defendant Cotiviti's own misrepresentations and omissions prevented Plaintiff from suing Eliza Corporation before it was absorbed into Cotiviti.**

Plaintiff believes the above establishes the propriety of personal jurisdiction and venue, but this depends on the Court attributing Eliza's contacts and actions to Defendant Cotiviti. While this is proper and appears to be undisputed law in Pennsylvania, a holding to the contrary would reward Defendants' misrepresentations and omissions which prevented Plaintiff from adding Eliza as a defendant prior to its merger into Defendant Cotiviti.

**Highmark's First Misrepresentation/Omission**: On July 23, Defendant Highmark identified Eliza as a third-party vendor with information on the calls. Exhibit G, Def.'s Initial Disclosures. It did not identify Eliza as the vendor that made the calls, but instead identified it as a vendor that had "[d]iscoverable information concerning, *inter alia*: Plaintiff's Telephone Number, caller consent or revocation thereof, complaints, call notes and/or logs, call trainings,

policies, and evaluations, membership information." *Id.* at ¶ A. This is the same information it claimed all its identified witnesses possessed. Defendant also noted that this vendor could be contacted through Defendant's counsel and did not provide any other way to contact Eliza. As far as Plaintiff is aware, however, Defendant Highmark's counsel never represented Eliza nor had any good faith basis to require that contact go through Defendant Highmark. *See, e.g. N. Am. Lubricants Co. v. Terry*, 2011 U.S. Dist. LEXIS 133672, *12-13 (E.D. Cal. Nov. 18, 2011) (finding it improper to withhold non-employee or non-represented persons contact information in favor of "contact through counsel"). Defendant Highmark's counsel did not clarify until October 20, 2021 that it did not actually represent Eliza. Glapion Decl., ¶ 5.

**Highmark's Second Misrepresentation/Omission**: The logical question, of course, is why Plaintiff did not presume that the only identified third-party vendor in the initial disclosures was the vendor that made the calls. The answer is that Defendant Highmark actively rebutted such a presumption. Plaintiff served a discovery request on Defendant Highmark explicitly asking for the name and contact information for the vendor that made the calls. In response, Defendant responded on July 30 that it was "unable to determine at this time that a third-party dialed the Cellular Telephone Number on behalf of Highmark". Exhibit H, Def.'s July 30 Response to Interrogatory 4. This makes little sense. If Defendant Highmark did not know on July 30 that a third-party made the calls, why did it identify Eliza in its initial disclosures on July 23? What involvement did it think Eliza Corporation had? At that point, seven months into the case, Defendant Highmark's response that it was not aware that a third-party[8] made at least *some* of the

---

[8] There is significance in Defendant Highmark's response stating it was unable to determine that *a* third-party dialed the calls—suggesting a third-party may not have been involved at all—rather than a response stating it was unable to determine the name of *the* third-party that dialed the calls.

calls at issue strains credulity. As such, even if Plaintiff could have or should have presumed that Eliza was the vendor that made the calls, Defendant Highmark's July 30 discovery response rebutted this presumption.

**Highmark's Third Misrepresentation/Omission**: Fast forward to August. Plaintiff's deadline to add new parties passed on August 9, 2021. As of that point, Defendant Highmark had provided no additional information on the third-party vendor that made the calls. On August 16, on a discovery dispute call with this Court, Defendant Highmark's counsel represented to the Court that it had obtained documents from at least one of the vendors that placed calls to Plaintiff. Exhibit I, August 16 Hrg. Trns., 7:18-20. Defendant Highmark's counsel also represented on this call that it knew about the calls referred to in Plaintiff's complaint and believed that all calls were made by a vendor with which it had been in contact and from which it had received documents and information. *Id.* at 9:4-7. Plaintiff followed up via email on August 25 for the name of that vendor and again on September 27 (after receiving no response). Defendant refused to provide any information, instead claiming that the Court's August 16 order which permitted it to complete a rolling production of documents by October 15, Dkt. 41, also permitted it to withhold supplemental responses to interrogatories, including the name of the vendor here. Exhibit J.

**Cotiviti's First Omission**: On September 14, 2021, after issuing a subpoena to the carrier of two of the numbers that called Plaintiff, Plaintiff was able to identify Eliza as the user of those numbers. It was not until October 6, however, that Plaintiff learned of Defendant Cotiviti and was given the information for Cotiviti's General Counsel, Omar Kilany. Plaintiff's counsel reached out that same day, and Mr. Kilany responded to Plaintiff's email on October 8, 2021, explaining that

Plaintiff's email was the first time he was hearing about the matter.[9] At no point during this correspondence nor during any subsequent correspondence between Plaintiff's counsel and Mr. Kilany did Mr. Kilany indicate that Defendant Cotiviti was the wrong potential party. Plaintiff's counsel made clear during these communications that he was trying to determine if Cotiviti should be added as a Defendant, so as not to cause anyone to incur unnecessary costs and expenses. Plaintiff previously made note of these conversations in his request for leave to amend to add Cotiviti. [Dkt. 65, ¶¶ 18-20.]

**Highmark's Fourth Misrepresentation/Omission**. On October 15, an unjustifiable two months after Defendant Highmark had represented to the Court that it had identified the vendor that made the calls, Defendant Highmark provided an amended response to Plaintiff's previous interrogatories identifying Eliza as the vendor that made the calls, stating that "Eliza became Cotiviti, Inc.", and providing Cotiviti's Utah address. Exhibit F, Def.'s October 15 Response to Interrogatory 4.

But this was not true. As Defendant Cotiviti's declaration makes clear, Eliza and Cotiviti remained separate entities until December 31, 2021, Flieger Decl., ¶ 5. A search of Delaware business records for Eliza Corporation also shows a merger effective December 31, 2021, confirming the Flieger Declaration's representations. Exhibit K. Eliza being bought by Cotiviti and Eliza *becoming* Cotiviti are not the same. Defendant Highmark's false representation that Eliza had *become* Defendant Cotiviti deprived Plaintiff of the opportunity to add Eliza, which, contrary to Defendant Highmark's representation, existed as a separate entity when Plaintiff sought leave

---

[9] This also seems unlikely to be true, if, as of August 16, Defendant Highmark had obtained documents from Cotiviti/Eliza.

to amend his complaint on the November 29 deadline. Plaintiff relied on this representation in seeking leave to amend to add Cotiviti rather than Eliza. [Dkt. 65, ¶ 12.][10]

Defendant Highmark continued to represent through November 30 that it was Defendant Cotiviti that made the calls rather than Eliza. Exhibit M, Nov. 30, 2021 Hrg. Transcript, 9:1-10.

**Cotiviti's Second Omission:** Also troubling is Defendant Cotiviti's counsel's request for an extension of time to respond to Plaintiff's second amended complaint.[11] Defendant Cotiviti's response was due on December 29, 2021, at which point Eliza was still a separate entity. On December 18, Defendant Cotiviti's counsel requested from Plaintiff an extension of time to respond to the complaint to January 28, 2022 (for reasons unrelated to any Cotiviti/Eliza distinction) and Plaintiff agreed. Unbeknownst to Plaintiff, this extension proved vital to the Motion Defendant now makes, which essentially amounts to "you sued the wrong company and now it's too late". The facts necessary to this argument would not become ripe until December 31, after Defendant Cotiviti's original response deadline. Had Defendant Cotiviti raised concerns about this issue prior to December 31 or answered on its original deadline, this issue could have easily and efficiently been solved by amendment.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant Cotiviti's Motion in its entirety.

---

[10] Paragraph 11, which states that Plaintiff was able to identify Cotiviti as the new name for Eliza Corp., was based on the representation of the General Counsel of Eliza Corp's former owner—HMS Holdings—who informed Plaintiff's counsel that Cotiviti acquired Eliza, and directed Plaintiff to Cotiviti's General Counsel, Omar Kilany. Exhibit L.

[11] Plaintiff is hesitant to impute any bad faith to Defendant Cotiviti's counsel. Plaintiff's counsel and Defendant Cotiviti's counsel have a strong relationship in this case and have worked together very well in previous cases.

**Dated:** February 17, 2022                    s/ Jeremy M. Glapion_____
                                                Jeremy M. Glapion
                                                **THE GLAPION LAW FIRM, LLC**
                                                1704 Maxwell Drive
                                                Wall, New Jersey 07719
                                                Tel: 732.455.9737
                                                Fax: 732.965.8006
                                                jmg@glapionlaw.com

21