IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER JAMES WALKER,<br><br>    Plaintiff,<br><br> v.<br><br>HIGHMARK BCBSD HEALTH OPTIONS,<br>INC., *et al*.<br><br>    Defendants. | 2:20-CV-01975-CCW |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cotiviti, Inc.'s Motion to Dismiss Plaintiff Christopher James Walker's Second Amended Complaint. ECF No. 78. On November 30, 2020, Mr. Walker filed a putative class action lawsuit against Highmark in the Court of Common Pleas of Allegheny County, Pennsylvania. *See* ECF No. 1-1. Mr. Walker claims that, without his consent, Defendant Highmark placed robocalls to his cell phone, in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, *et. seq*. (TCPA)). *See id.* On December 21, 2020, pursuant to 28 U.S.C. §§ 1331 and 1441, Highmark timely removed the case to federal court in the Western District of Pennsylvania. *See* ECF No. 1, ¶¶ 10–13, 20.

After removal, Mr. Walker amended the complaint twice; the operative Second Amended Complaint added defendant Cotiviti, Inc., which is a Delaware Corporation with headquarters in Utah. *See* ECF No. 71 ¶ 14. Cotiviti now moves to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), claiming that this Court cannot exercise personal jurisdiction over Cotiviti and that venue in the Western District of Pennsylvania is improper. *See* ECF No. 78. For the reasons set forth below, the Court will deny Cotiviti's Motion.

1

## I. Standard of Review

### A. Section 12(b)(2) Personal Jurisdiction

"'A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.'" *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute permits jurisdiction to be exercised "based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). Therefore, in analyzing whether personal jurisdiction exists, this Court must determine "whether, under the Due Process Clause, the defendant has 'certain minimum contacts with…[Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316-17 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos* 566 F.3d at 102 (3d Cir. 2009) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). In opposing a motion under Rule 12(b)(2), "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

Personal jurisdiction can either be in the form of general (*i.e.* all-purpose) personal jurisdiction or specific (*i.e.* case-linked) personal jurisdiction. *See Bristol-Meyer Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1779-80 (2017). In short,

> A federal court entertaining a suit must possess one of two forms of personal jurisdiction over each defendant. The first type of jurisdiction, known as specific jurisdiction, requires that the plaintiff's claim arise from the defendant's contacts with the forum in which the court sits. In contrast, the court may exercise general jurisdiction over a defendant who possesses systematic and continuous contacts with the forum regardless of whether the plaintiff's claim derives from the defendant's in-forum activities.

*In re Chocolate Confectionary Antitrust Litig.,* 602 F. Supp. 2d 538, 557 (M.D. Pa. 2009) (citations omitted).

General jurisdiction analysis looks to whether the defendant is, in effect, "at home" in the forum. *See Daimler AG v. Bauman,* 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. 915, 919 (2011)). For a corporation, its place of incorporation and principal place of business are the paradigmatic bases for general jurisdiction. *See id.* at 137. The specific jurisdiction analysis, on the other hand, "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Although physical entrance into the forum state is not required for specific jurisdiction to exist, "what is necessary is a deliberate targeting of the forum. Thus, the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient." *O'Connor*, 496 F.3d at 317 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

"If these 'purposeful availment' and 'relationship' requirements are met, a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction 'comport[s] with fair play and substantial justice.'" *Miller Yacht Sales*, 384 F.3d at 97 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). In addressing the "fairness question," a district court may consider "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of

controversies, and the shared interest of the several States in furthering substantive social policies.'" *Id.* (quoting *Burger King* 471 U.S. at 477).

### B.      Section 12(b)(3) Venue

"Venue refers to locality, the place where the lawsuit should be heard.  The key to venue is that it 'is primarily a matter of choosing a convenient forum.'" *Southern Polymer Inc. v. Master Extrusion, LLC*, 2016 U.S. Dist. LEXIS 44189, at *14 (W.D. Pa. Mar. 30, 2016) (*quoting Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).  When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3), the Court generally accepts all factual allegations in the complaint as true;  however, "parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." *Heft v. AAI Corp.*, 355 F.Supp.2d 757, 762 (M.D. Pa. 2005);  *see also S. Polymer, Inc. v. Master Extrusion, LLC*, Civil Action No. 15-cv-1696, 2016 U.S. Dist. LEXIS 44189, at *2 (W.D. Pa. Mar. 30, 2016);  2 Moore's Federal Practice – Civil § 12.32, at *4 (2020).  The burden is on the movant to demonstrate that venue is improper.  *See Joe Hand Promotions, Inc. v. Sheshadeh*, Civil Action No. 18-4119, 2019 U.S. Dist. LEXIS 79206, at *5 (E.D. Pa. May 10, 2019).

## II.     Discussion

### A.      Cotiviti Assumed Eliza's Liabilities

Cotiviti attempts to avoid personal jurisdiction by asserting that it did not contract with Highmark to conduct the automated telemarketing, nor did it make the robotic phone calls to Mr. Walker from March 28, 2020, through December 4, 2020, as alleged;  therefore, Cotiviti contends, it cannot be held liable for the alleged TCPA violation.  ECF No. 85-3, 85-12;  *see* ECF No. 79, p. 12.  Neither side disputes that Eliza Corporation, which maintained a call center located in the

Eastern District of Pennsylvania, was engaged by Highmark to make the calls at issue.  *See* ECF No. 85-6; *see also* ECF No. 79, p.12.  But, Mr. Walker argues that Cotiviti, by its acquisition of Eliza, assumed its business operations, and therefore, its liabilities.  *See* ECF No. 85 at 3–4.  Cotiviti registered as a business in the state of Pennsylvania on March 16, 2021, and fully acquired Eliza as of December 31, 2021, absorbing Eliza into its corporate structure after the calls had concluded.  ECF Nos. 85-3, 85-12.  Currently, Cotiviti fully owns and operates the data center in Bethlehem, Pennsylvania (where at least some of the calls at issue here originated) that was formerly owned and operated by Eliza.  *See* ECF No. 79 at 12; Flieger Decl., ECF No. 79-1, § 7.  Indeed, Mr. Walker contends that, because Eliza did not survive as a separate entity—a fact Cotiviti does not dispute—Cotiviti's acquisition of Eliza amounted to a merger under Pennsylvania law, and, as such, Eliza's jurisdictional contacts should be imputed to Cotiviti as Eliza's successor.  *See* ECF No. 85 at 3–5;  *see also* Merger Filing ECF No. 85-12;  Costalas email to Glapion, ECF No. 85-13 ("I am connecting you with Omar Kilany in the Cotiviti Legal Department.  Cotiviti acquired the Eliza business previously owned by HMS."); ECF No. 79 ("Plaintiff is correct that Eliza, due to a series of acquisitions and corporate restructuring, no longer exists by name and its business has been fully absorbed into Cotiviti, as of December 2021.").

Under the theory of "successor jurisdiction," "the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process." *Wortham v. Karstadtquelle AG*, 153 F. App'x 819, 822, 825 (3d Cir. 2005).  Successor jurisdiction "'can be present in the following situations:  (1) merger or de facto merger; (2) express or implied assumption of liabilities, including by a ratification of the predecessor's activities;  or (3) acquisition of assets or reorganization undertaken to fraudulently avoid jurisdiction.'" *Am. Estates Wines, Inc. v. Kreglinger Wine Estates Pty, LTD*, Civil Action No. 07-2474 (JAG), 2008 U.S. Dist.

5

LEXIS 23494 at *13–14 (D.N.J. Mar. 25, 2008) (quoting *Wortham*, 153 F. App'x at 823).  Here, as Mr. Walker points out in his opposition to Cotiviti's Motion, "[w]hile Defendant Cotiviti does not provide extensive details regarding the nature of the transaction through which Eliza became part of Cotiviti, it repeatedly refers to it as a merger."  ECF No. 85 at 4 (citing ECF No. 79-1 ¶ 5 ("By December 31, 2021, through a series of acquisitions and corporate restructuring, Eliza fully merged into Cotiviti");  *Id.* at ¶ 6 ("Before Eliza merged into Cotiviti…";  "As a result of the merger of Eliza into Cotiviti…");  and ECF No. 79 at 11 ("Prior to being acquired by and merged into Cotiviti, one aspect of Eliza's business…")).  Indeed, Cotiviti's evidence concedes that Cotiviti took on the contract between Eliza and Highmark under which the allegedly unlawful calls were made.  *See* ECF No. 79-1 ¶ 6 ("As a result of the merger of Eliza into Cotiviti, the contract between Eliza and Highmark is now held by Cotiviti.").  Notably, Cotiviti does not address the issue of successor jurisdiction in either its opening brief or its reply.  Having reviewed the record, and, in particular, based on Cotiviti's repeated characterizations of its acquisition of Eliza as a "merger" and that it took on the contract under which the calls at issue here were made, the Court concludes that Eliza's jurisdictional contacts may be imputed to Cotiviti as Eliza's successor.

        **B.**      **Rule 12(b)(2) – The Court Has Personal Jurisdiction Over Cotiviti**

The Court first addresses whether it has specific persona jurisdiction over Cotiviti. Because we conclude that it does, we need not reach the issue of general personal jurisdiction.

The United States Court of Appeals for the Third Circuit has articulated a three-part test to determine whether specific jurisdiction exists.  First, "the defendant must have 'purposefully directed [its] activities' at the forum."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  Second, "the litigation must 'arise out of or relate to' at least one of those activities."  *Id.* (quoting *Helicopteros*

6

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Third, and finally, "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'" *Id.* (quoting *Burger King*, 471 U.S. at 476 (quoting *Int'l Show Co. v. Washington*, 326 U.S. 320 (1945))). "The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum. The threshold requirement is that the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102-03 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Having determined that Cotiviti, as Eliza's successor-via-merger, took on Eliza's jurisdictional contacts, the Court concludes that Cotiviti has sufficient case-specific contacts with Pennsylvania for this Court to exercise specific personal jurisdiction over it. That is, it is undisputed that at least some of the calls at issue here originated from the Bethlehem, PA, call center and that Eliza (now Cotiviti) purposefully availed itself of Pennsylvania by making the contracted calls that are at issue in this litigation. *See, generally,* ECF No. 79-1. In addition to making the calls, Eliza (now Cotiviti) contracted with Highmark, took direction from Highmark to perform the automated calls, and presumably was compensated for its work by Highmark. *See id.* Given Eliza's contacts with Pennsylvania—which may be imputed to Cotiviti as a result of the merger—including its relationship with the other defendant in this case, Highmark, the Court further concludes that exercising jurisdiction here "'comport[s] with fair play and substantial justice.'" *Miller Yacht Sales*, 384 F.3d at 97 (citation omitted). That is, resolving Mr. Walker's claims in Pennsylvania (1) will not impose an undue burden on Cotiviti (nor does Cotiviti contend that it would); (2) is in accordance with Pennsylvania's interest in cases involving allegedly unlawful activity emanating from within the Commonwealth; and (3) comports with Mr. Walker's

interest in efficient resolution of his claims, given his choice of forum. As such, to the extent Cotiviti seeks dismissal for lack of personal jurisdiction, its Motion will be denied.

### C. Rule 12(b)(3) – Venue is Proper in the Western District of Pennsylvania

Alternatively, Cotiviti seeks dismissal pursuant to 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"), asserting that the Western District of Pennsylvania is an improper venue under 28 U.S.C. § 1391.[1] *See* ECF No. 79 at 14–17. Mr. Walker, in opposition, contends that venue in a case removed from state court is properly reviewed under 28 U.S.C. § 1441(a) (providing that, except as otherwise expressly required by law, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."), but, even if § 1391 is the correct lens through which to analyze venue in this case, venue is proper under § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this district. *See* ECF No. 85 at 10, 13–16.

Under the Jurisdiction and Venue Clarification Act of 2011, "[t]his chapter [i.e. 28 U.S.C. §§ 1390 et seq.] shall not determine the district court to which a civil action pending in a State court may be removed, but shall govern the transfer of an action so removed as between districts and divisions of the United States district courts." 28 U.S.C. § 1390(c). This statute codifies the long-standing rule that venue in removal cases is governed by § 1441 not § 1391. *See Polizzi v.*

---

[1] Cotiviti primarily argues for dismissal and does not offer any alternative forum for transfer. It is not in the interest of judicial economy to transfer Cotiviti's case as the cases against Highmark and Cotiviti are substantially similar, and involve the same facts and same plaintiff.

*Cowles Magazines, Inc.,* 345 U.S. 663, 665-66 (1953) ("The venue of removed actions is governed by 28 U.S.C. (Supp. V) § 1441(a)"); *see also Exec. Wings, Inc. v. Dolby,* 131 F. Supp. 3d 404, 413 (W.D. Pa. 2015) ("'For actions removed from state court . . . venue is governed by 28 U.S.C. § 1441(a)") (citing *Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.*, 721 F. Supp. 2d 346, 351 (E.D. Pa. 2010)).

This case was removed from state court. As such, venue is properly assessed under § 1441(a), not 1391. And, as noted above, § 1441(a) provides that venue in cases removed from State court is properly laid in the "district and division embracing the place where the state court action is pending." Mr. Walker originally filed this case in the Court of Common Pleas of Allegheny County, Pennsylvania; therefore, venue is proper in the Western District of Pennsylvania. *See* ECF No. 1 ¶ 1. Finally, while § 1441 does not cover the transfer of cases between districts—*see* 28 U.S.C. § 1390(c) ("[t]his chapter shall govern the transfer of an action so removed as between districts and divisions of the United States district courts")—thus making it possible that a case removed to the correct district under § 1441 could be transferred to another district pursuant to § 1404 (providing for permissive transfer "for the convenience of parties and witnesses, in the interest of justice"), Cotiviti has sought only dismissal here, not transfer. *See* ECF No. 79 at 16–17 ("Because venue is improper in this District, the Court 'shall dismiss' this action against Cotiviti…It is not 'in the interest of justice' to merely transfer this action."). Because venue is proper in the Western District of Pennsylvania under 28 U.S.C. 1441(a), the Court will deny Cotiviti's Motion to the extent it seeks dismissal under § 1406.

**III.   Conclusion**

For the foregoing reasons, Cotiviti's Motion to Dismiss, ECF No. 78, is hereby DENIED. Cotiviti shall respond to Plaintiff's Second Amended Complaint on or before June 15, 2022.

DATED this 3rd day of June, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record