IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER JAMES WALKER, KIM
STERLING, and ERNIE FISHER, *on behalf of
themselves and all others similarly situated*,

                Plaintiff,

    v.

HIGHMARK BCBSD HEALTH OPTIONS,
INC., COTIVITI, INC.,

                Defendants.

2:20-CV-01975-CCW

## OPINION

Before the Court is the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class. *See* ECF No. 112. For the reasons that follow, the Motion will be GRANTED.

## I.    Background

On November 30, 2020, Plaintiff Christopher James Walker filed a class action complaint in the Court of Common Pleas of Allegheny County against Highmark BCBSD Health Options, Inc. ("Highmark"), alleging that Highmark violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). ECF No. 1-1 ¶¶ 1, 51–55. Specifically, Mr. Walker asserted that Highmark violated the TCPA by using automated and pre-recorded messages to call his and putative class members' cellphones without those individuals' consent. *Id.* ¶¶ 19–29. Mr. Walker brought a single claim under the TCPA, seeking injunctive, declaratory, and monetary relief, including treble damages and attorneys' fees. *Id.* at 11.

On December 21, 2020, pursuant to 28 U.S.C. §§ 1331 and 1441, Highmark timely removed the case to the United States District Court for the Western District of Pennsylvania. ECF No. 1 ¶¶ 10–13, 20. Highmark then filed a motion to dismiss for lack of jurisdiction, which Mr. Walker opposed. ECF Nos. 10 & 24. Subsequently, Mr. Walker filed a motion to remand, as well as a motion to stay. ECF Nos. 12 & 14. Highmark opposed both. ECF Nos. 18 & 19. The Court denied all three motions. ECF Nos. 22, 23, & 28.

On August 5, 2021, Mr. Walker filed a First Amended Complaint. ECF No. 38. With consent from Highmark, Mr. Walker filed a Second Amended Complaint to include Cotiviti, Inc. as another defendant (collectively "Defendants"), alleging that Cotiviti also engaged in placing automated and pre-recorded calls to individuals, including Mr. Walker, without any consent. ECF Nos. 68 & 71 ¶ 1.

Starting in mid-2021, the parties conducted discovery on the issue of class certification for over a year. *See* ECF Nos. 36, 93, & 99. During this time, the Court resolved several discovery disputes. ECF Nos. 41 & 70. In addition, Cotiviti filed a motion to dismiss, which the Court denied. ECF Nos. 78 & 90.

On July 29, 2022, the Court was advised that the parties reached a settlement with the assistance of a mediator. Shortly thereafter, Mr. Walker filed a final Third Amended Complaint to include additional named plaintiffs, *see* ECF No. 111 (including Kim Sterling and Ernie Fisher as named plaintiffs),[1] and on November 18, 2022, Mr. Walker filed the instant Motion, seeking preliminary approval of a class action settlement and conditional certification of a class for settlement purposes, which neither Highmark nor Cotiviti oppose, *see* ECF No. 112.

---

[1] Mr. Walker, Ms. Sterling, and Mr. Fisher are collectively referred to as "Plaintiffs."

II.     **Standard of Review**

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e). Furthermore, where the settlement would bind class members, "the court may approve [the settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Accordingly, "when a district court is presented with a class settlement agreement, the court must first determine that 'the requirements for class certification under Rule 23(a) and (b) are met, and must separately "determine that the settlement is fair to the class under [Rule] 23(e)."'"  *In re NFL Players Concussion Injury Litig.* ("*NFL II*"), 775 F.3d 570, 581 (3d Cir. 2014) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011)).

Courts in the Third Circuit generally follow a two-step process for approval of class settlements.  First, "the parties submit the proposed settlement to the court, which must make 'a preliminary fairness evaluation.'"  *In re NFL Players' Concussion Injury Litig.* ("*NFL I*"), 961 F. Supp. 2d 708, 713–14 (E.D. Pa. 2014) (quoting *Manual for Complex Litigation (Fourth)* § 21.632 (2004) ("*MCL*")).  At the preliminary approval stage,

> the bar to meet the "fair, reasonable and adequate" standard is lowered, and the court is required to determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."

*NFL I*, 961 F.Supp.2d at 714.  According to the United States Court of Appeals for the Third Circuit, there is "an initial presumption of fairness when the court finds that (1) the negotiations occurred at arm's length;  (2) there was sufficient discovery;  (3) the proponents of the settlement

3

are experienced in similar litigation;  and (4) only a small fraction of the class objected."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig*. ("*GMC*"), 55 F.3d 768, 785 (3d Cir. 1995).[2]

Even though there is a "strong presumption" in favor of class settlements, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595–96 (3d Cir. 2010), "preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement."  *NFL I*, 961 F. Supp. 2d at 714 (citation omitted). As such, "[j]udicial review must be exacting and thorough," *id.* (quoting *MCL* § 21.61), such that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Zimmerman v. Zwicker & Assocs., P.C.*, No. 09-3905 (RMB/JS), 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011) (citation omitted);  *see also*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("In cases such as this, where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, we require district courts to be even 'more scrupulous than usual' when examining the fairness of the proposed settlement.").

If approval of the proposed class settlement is sought contemporaneously with certification of the class—that is, when the parties agree to a class-wide settlement "before the district court has issued a certification order under Rule 23(c)"—"'the certification hearing and preliminary fairness evaluation can usually be combined.'"  *NFL II*, 775 F.3d at 582 (quoting *MCL* § 21.632). When doing so,

---

[2] At the final approval stage, a more demanding test applies, requiring the Court to examine the so-called *Girsh* factors:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

> [t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). . . .  If there is a need for subclasses, the judge must define them and appoint counsel to represent them.  The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* (quoting *MCL* § 21.632) (internal citation omitted).  Thus, a district court may preliminarily certify a class under Rule 23(e) to facilitate notice to absent class members, fairly and efficiently resolve litigation, and preserve the resources of the court and the litigants, "allow[ing] the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims."  *Id.* at 583.

Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," if such notice is justified by a showing that the Court will "will likely be able to:  (i) approve the proposal under Rule 23(e)(2);  and (ii) certify the class for purposes of judgment on the proposal."[3]  Rule 23(e)(2) does not "displace any factor," discussed above, "but rather . . . focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2), Advisory Committee Note.

---

[3] Under Rule 23(e)(2), a Court may approve a settlement proposal that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:  (A) the class representatives and class counsel have adequately represented the class;  (B) the proposal was negotiated at arm's length;  (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal;  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;  (iii) the terms of any proposed award of attorney's fees, including timing of payment;  and (iv) any agreement required to be identified under Rule 23(e)(3);  and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ.  P. 23(e)(2).

III.    **Analysis**

A.    **The Court Will Preliminarily Approve the Proposed Settlement**

For preliminary approval of the proposed settlement, the Court begins with an analysis of the *GMC* factors, which can establish a presumption of fairness.  First, the parties reached a settlement with the assistance of a neutral mediator, indicating that negotiations occurred at arm's length without any evidence of collusion.  *See* ECF No. 100.  This fact weighs in favor of preliminary approval because "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."  *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905(MF), 09-1248(MF), 09-4587(MF), 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2021) (cleaned up).  Second, there has been sufficient discovery.  The parties litigated this case for nearly two years, conducted extensive discovery, and hired third-party database experts to help review the voluminous production.  ECF No. 113 at 17–18.  Third, the counsel acting on behalf of the proposed class has significant experience in TCPA class actions.  *Id.* at 18;  *see also* ECF No. 113-4 ¶¶ 3–5.  The fourth and final *GMC* factor—the subset of class members who have objected to the settlement cannot be assessed at this point because a class has not yet been certified and notice to the class has not yet been provided.  ECF No. 113 at 19.  On balance, the *GMC* factors weigh in favor of preliminary approval, such that an initial presumption of fairness attaches.

The Court will next review whether there are any "obvious deficiencies," such as "unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether [the settlement] appears to fall within the range of possible approval."  *NFL I*, 961 F.Supp.2d at 714;  *see also Zimmerman*, 2011 WL 65912, at *2 (quoting *GMC*, 55

F.3d at 785).  If there are no obvious deficiencies, then the Court will find that the settlement is "fair, reasonable, and adequate" pursuant to Fed. R. Civ. P. 23(e)(2).

First, with respect to the incentive awards, there does not appear to be any unduly preferential treatment of the named plaintiffs.  As part of the settlement, Mr. Walker will receive a $10,000 incentive award as the original named plaintiff, and Ms. Sterling and Mr. Fisher will receive a $2,500 incentive award each as subsequent named plaintiffs.  *See* ECF No. 113 at 22 n.14.  The parties are correct that courts have approved a $10,000 award for a named representative of a TCPA class.  *See, e.g.*, *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed. App'x 880, 882, 885 (3d Cir. 2016).  That said, $10,000 is generally considered the absolute outer limit in a TCPA case, and courts have struck down that amount as excessive.  *See Ward v. Flagship Credit Acceptance, LLC*, No. 17-2069, 2020 WL 759389, at *21 (E.D. Pa. Feb. 13, 2020) (noting that a $10,000 incentive award "is greatly disproportionate to incentive awards that have been approved in other TCPA cases");  *see also Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 9413143, at *3 (Dec. 22, 2015) (finding a $10,000 incentive award in a TCPA settlement was "excessive and unfair").

The appropriateness of a $10,000 incentive award depends heavily on the involvement of the named representative and the overall inequity between the named and unnamed class members. *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014);  *Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *11 (S.D. Ohio Feb. 7, 2014).  Here, while Mr. Walker will receive $10,000 as an incentive award, unnamed class members will receive approximately $1,300.  ECF No. 113 at 19.  Because a named plaintiff receiving about ten times the amount as the unnamed class members is considered fair and reasonable, *see, e.g., Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 WL 3995619, at *16 (S.D.N.Y. Sept.

7

11, 2017), Mr. Walker's incentive award does not appear to be unduly preferential. In addition, Mr. Walker has assisted counsel for close to two years and timely responded to all discovery requests. ECF No. 113 at 22. With respect to the other named plaintiffs, their incentive award of $2,500 each is appropriate in light of the critical role they played during the settlement negotiations. *Id.* Accordingly, at this stage, the Court finds that the incentive awards for the named plaintiffs—although high—are fair and reasonable and do not indicate unduly preferential treatment.

Next, regarding the compensation for class counsel, class counsel's request—one-third of the proposed settlement—appears to be high for TCPA cases. *See Brown*, 242 F. Supp. 3d 356, 365, 370 (E.D. Pa. 2017) (denying a fee award of one-third given "the simplicity of TCPA litigation"). That said, courts can scrutinize "the amount of work actually performed by [class counsel]" and the "duration of the litigation" to determine whether the request is warranted. *Id.* at 365; *see also Ward*, 2020 WL 759389, at *22 ("[C]ertainly in TCPA cases that settled before there was any motion practice or merits discovery, a lower attorney's fee award [than one-third of the settlement] is more appropriate."). In this case, because class counsel has litigated this case for almost two years and engaged in extensive motion practice and discovery, the Court finds that a class counsel award of one-third the proposed settlement appears to be fair and reasonable at the preliminary approval stage.

Finally, upon examining the terms of the settlement, the award for each class member is more favorable than other TCPA settlements that have been approved. Here, the settlement will award approximately $70.69 for each eligible call, resulting in an award of approximately $1,300 per class member. ECF No. 113 at 19. This result far exceeds other settlements involving similar claims. *See, e.g.*, *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 345 (D.N.J. 2020)

(awarding $75.30 to TCPA class members);  *Brown v. Rita's Water Ice Franchise Co. LLC*, No. 15-3509, 2017 WL 4102586, at *3 (E.D. Pa. Sept. 14, 2017) (awarding $144 to TCPA class members);  *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, No. 3:14-00645, 2016 WL 54678, at *1 (D. Or. Jan. 5, 2016) (awarding $140.86 to TCPA class members).  Notably, although the TCPA entitles each claimant to "receive $500 in damages for *each* such violation," *see* 47 U.S.C. § 227(b)(3)(B) (emphasis added), settlements in TCPA cases "almost always result in per claimant awards that are far less than the statutory damages amount," *Ward*, 2020 WL 759389, at *7. Receiving less than the statutory damages provision allows class members to avoid the uncertainty and delays associated with trial.

Accordingly, there being "no obvious deficiencies" and the settlement "fall[ing] within the range of reason," *Zimmerman*, 2011 WL 65912, at *2, the Court finds for the purposes of preliminary approval that the proposed settlement appears to be "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

### B.    The Court Will Provisionally Certify the Rule 23 Class

Turning to provisional certification of the settlement class, Plaintiffs seek to certify the following class pursuant to Rule 23(b)(3),

> A. During the Class Period, all persons within the United States who are subscribers or primary users of a cellular telephone number to which Defendant Highmark BCBSD Health Options Inc. placed (or had placed on its behalf by Defendant Cotiviti, Inc.) a telephone call using a pre-recorded or artificial voice,
>
> > 1) when such a call to that telephone number had previously resulted in (a) a "WRONG_NUMBER" disposition or (b) a "MSG_DECLINED" disposition without a subsequent disposition of "CORRECT_PERSON" or "MSG_HUMAN" and
> >
> > 2) when at least one subsequent call to that telephone number had the disposition "WRONG_NUMBER", "MSG MACHINE", "CORRECT_PERSON", "MSG_HUMAN", "HANGUP", "NO_CONTINUE", or "MSG_DECLINED".

> B. Excluding those persons who *only* received calls as part of a COVID Campaign, as well as Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families.

ECF No. 113-1 § 2.32.  As set forth below, the Court finds that, for the purposes of provisional certification, the proposed class meets the criteria set forth in Rule 23(a) and Rule 23(b)(3).

To satisfy Rule 23(a), (1) the proposed class must be "so numerous that joinder of all members is impracticable";  (2) there must be "questions of law of fact common to the class";  (3) the representative parties' claims and defenses must be "typical of the claims or defenses of the class";  and (4) "the representative parties [must] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

First, with approximately 7,403 members, the proposed class satisfies the numerosity requirement.  The Third Circuit has held that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40," the numerosity requirement has been met.  *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).  Joinder of thousands of plaintiffs would certainly be impracticable.

Second, the commonality requirement is met.  In the Third Circuit, "[c]ommonality does not require perfect identity of questions of law or fact among all class members" but can be satisfied if even a "single common question" exists.  *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. 338, 359 (2011)).  The proposed class shares numerous common questions, the central one being whether they received any pre-recorded calls from Defendants in violation of the TCPA.  ECF No. 113 at 25.

Third, the proposed class has met the typicality requirement, which can be found "where there is a strong similarly of legal theories or whether the claim arises from the same practice or

course of conduct." *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (internal quotations omitted).  In this case, the proposed class has the same legal theory—that Defendants called class members' cellphones with pre-recorded calls in violation of the TCPA—and the claim arises from the same course of conduct—Defendants placed calls in violation of the TCPA.  ECF No. 113 at 26.

Finally, for the purposes of preliminary certification, the Court finds the named plaintiffs and counsel are free from conflicts of interest, as well as competent and qualified to represent the class, such that they are adequate representatives.  *See* ECF 113-4 (description of class counsel's experience);  *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012) ("According to the Third Circuit, Rule 23(a)(4) adequacy is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation;  and (2) class representatives have no conflicts of interests.") (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d. Cir. 2007)).  Therefore, the proposed class satisfies each requirement set forth in Rule 23(a).

With respect to Rule 23(b)(3), the proposed class must have "questions of law or fact common to class members [such that they] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The predominance requirement under Rule 23(b)(3) is often considered in conjunction with the commonality requirement under Rule 23(a)(2). *See Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) ("'[W]here an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance requirement.'") (citation omitted).  However, the predominance requirement is "far more demanding than the commonality requirement" because it requires "more than a common claim." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 483 (3d Cir. 2015) (internal quotations omitted).  Rather,

the parties must show that "the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127–28 (3d Cir. 2018) (internal citation and quotation omitted).  In this case, the proposed class meets the predominance requirement under Rule 23(b)(3) because the essential elements of the claim—that Defendants placed pre-recorded calls in violation of the TCPA—are capable of proof at trial and common to each of the class members.

Finally, Rule 23(b)(3) has a superiority requirement that asks whether a class action is the superior method to decide the matter. Fed. R. Civ. P. 23(b)(3).  Courts are instructed "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'"  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533–34 (3d Cir. 2004) (quoting *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 316 (3d Cir. 1998)).  The Court finds that superiority is met here because a class action would avoid thousands of duplicative lawsuits and allow for efficient processing of class members' claims.  ECF No. 113 at 30.   Also, given the posture of this case—i.e. proposed settlement—the Court also finds that there are not likely to be "difficulties in managing" the action.  Fed. R. Civ. P. 23(b)(3)(D);  *see also Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997) (noting that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").

Accordingly, the Court concludes that the proposed settlement Rule 23 Classes meet the criteria set forth in Rule 23(a) and Rule 23(b)(3).

### C.     The Proposed Notice Is Reasonable

Finally, the Court considers the parties' plan for the dissemination of notice.   Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Where, as here, the class is to be certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Such notice "must clearly and concisely state in plain, easily understood language:  (i) the nature of the action;  (ii) the definition of the class certified;  (iii) the class claims, issues, or defenses;  (iv) that a class member may enter an appearance through an attorney if the member so desires;  (v) that the court will exclude from the class any member who requests exclusion;  (vi) the time and manner for requesting exclusion;  and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  *Id.*

The Court has reviewed (1) the proposed notice forms to be sent via mail;  (2) the proposed claim form, which meets the requirements outlined in Rule 23(c)(3); and  (3) the proposed plan, including (a) the involvement of Epiq Class Action and Claims Solutions, Inc. and Hilsoft Notifications, a firm that specializes in implementing and executing national legal notification plans; (b) the timeline for disseminating notice;  (c) the direct mailing of the class members where addresses have been located;  (d) the publication of the notice on a settlement website;  (e) the creation of a toll-free telephone number to receive calls related to the settlement;  and (f) the process for opting-out and raising objections to the settlement.  ECF Nos. 113-1, 113-2, 113-3, and 113-5.  Although the Court has made slight modifications to the parties' proposed deadlines, such as an extension of the period for objections, the Court finds that these proposals meet the

Rule 23(c)(3) requirements and are reasonable and appropriate under the applicable Rule 23(e) standard.

As a consequence, the Court grants the parties' request and approves their proposed notice, claim form, and notice plan generally.

## IV.    Conclusion

For the foregoing reasons, the Court will GRANT the instant Motion and enter an Order (1) preliminarily approving the parties' proposed settlement;  (2) conditionally certifying a class under Rule 23(a) and (b)(3) for settlement purposes only, pursuant to Rule 23(e);  (3) appointing Plaintiffs' attorney Jeremy M. Glapion of Glapion Law Firm as class counsel;  (4) approving the parties' proposed form of notice and claims program;  (5) directing that notice be provided pursuant to the settlement agreement;  (6) adopting the procedures for opting-out or objecting to the settlement;  (7) setting the deadlines for objections or exclusions at 60 days after the notice deadlines;  (8) staying all proceedings except those related to effectuating the settlement;  and (9) setting a fairness hearing.

DATED this 13th day of December, 2022.

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record