# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER JAMES WALKER, KIM STERLING, and ERNIE FISHER** on behalf of themselves and all others similarly situated,<br><br>**Plaintiff,**<br>v.<br><br>**HIGHMARK BCBSD HEALTH OPTIONS, INC.; COTIVITI, INC.**<br><br>**Defendant.** | Civil Case No.: 20-cv-1975<br>Hon. Christy Criswell Wiegand |

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Table of Contents

I.   INTRODUCTION.............................................................................................. 1
II.  BACKGROUND AND SETTLEMENT ......................................................... 1

   A.   PLAINTIFFS' ALLEGATIONS AND PROCEDURAL HISTORY .............................. 1
   B.   THE SETTLEMENT ........................................................................................ 3

III. DISCUSSION ..................................................................................................... 4

   A.   LEGAL STANDARD FOR ATTORNEYS' FEES ...................................................... 4
   B.   APPLICATION OF GUNTER AND PRUDENTIAL FACTORS ................................. 5

        1.   Size of the fund and number of beneficiaries ................................... 5
        2.   Objections ............................................................................................. 6
        3.   Skill and efficiency ............................................................................... 6
        4.   Complexity and duration...................................................................... 9
        5.   Risk of non-payment........................................................................... 10
        6.   Amount of time devoted to the case.................................................. 10
        7.   Awards in similar cases ..................................................................... 11
        8.   Value attributable to Class Counsel .................................................. 12
        9.   Private fee negotiations ...................................................................... 12
        10.  Innovative Terms................................................................................. 12

   C.   LODESTAR CROSSCHECK ................................................................................ 13

        1.   Class Counsel's Hourly Rates Are Reasonable................................. 14
        2.   Class Counsel's Time Was Reasonably Expended ........................... 15
        3.   The Multiplier is Reasonable ............................................................. 16

   D.   CLASS COUNSEL'S COSTS ARE REASONABLE. ................................................. 18
   E.   THE SERVICE AWARDS TO PLAINTIFFS SHOULD BE APPROVED. ..................... 18

IV.  CONCLUSION ................................................................................................. 19

i

## I.   INTRODUCTION

On December 13, 2022, this Court preliminarily approved a class action settlement ("Settlement") between Plaintiffs Christopher Walker, Kim Sterling, and Ernie Fisher ("Plaintiffs") and Defendants Highmark BCBS Health Options, Inc. ("Highmark") and Cotiviti Inc. ("Cotiviti") (collectively, "Defendants'). The Settlement came after two years of litigation, including a lengthy discovery period, multiple dispositive motions, and a mediation.

The Settlement creates a $1,850,000 non-reversionary fund ("Settlement Fund") from which all eligible claimants will be paid *pro rata*. After estimated administrative costs, and the fees, costs, and incentive awards sought in this Motion, Class Members will receive approximately $1,300 based on an assumed claims rate of ten percent. This result is exceptional and the benefit conferred upon Class Members is substantial and real.

Now, Class Counsel respectfully moves the Court for an award of attorneys' fees of $616,666.67. This award reflects 1/3 of the Settlement Fund. This request is reasonable when considering the risks of this case, the quality of the work performed, and the result. Class Counsel also requests $21,516.61 in costs. Finally, Class Counsel respectfully asks the Court to confirm the service award of $10,000 to Plaintiff Walker, and $2,500 each to Plaintiffs Fisher and Sterling, for their work on behalf of the Classes.

## II.   BACKGROUND AND SETTLEMENT

### A.   Plaintiffs' Allegations and Procedural History

On November 30, 2020, Plaintiff Walker filed a complaint in the Court of Common Pleas, Allegheny County, Pennsylvania, alleging that, throughout 2020, Defendant Highmark repeatedly called his cell phone using a prerecorded or artificial voice. [Dkt. 1-1, Complaint, ¶¶ 19-30.] The calls appeared to be for someone else with whom Plaintiff Walker has no association, and Plaintiff

1

Walker had never been Defendant Highmark's customer. [*Id.*] Accordingly, Plaintiff Walker alleged that the prerecorded calls were made to Plaintiff without his consent and violated the Telephone Consumer Protection Act's ("TCPA"), 47 U.S.C. § 227(b), prohibition on prerecorded telephone calls to cell phones without the consent of the recipient. The TCPA provides for statutory damages of $500 per call made in violation, or up to $1500 per call for knowing or willful violations.

On December 21, 2020, Defendant Highmark removed the case to this Court. [Dkt. 1.] On January 26, 2021, Defendant Highmark moved to dismiss. [Dkt. 10.] On January 27, Plaintiff moved to remand on Article III standing grounds. [Dkt. 12.] On February 4, 2021, the Court denied Plaintiff's Motion to Remand, finding Article III standing present on the face of the complaint. [Dkt. 22.] The Court denied Defendant's Motion to Dismiss on May 14, 2021. [Dkt. 28.] After initial waves of discovery and an extension of deadlines, Plaintiff amended his complaint to add Defendant Cotiviti, Inc. on December 1, 2021. [Dkt. 71, Second Amended Complaint ("SAC").] Defendant Cotiviti was the entity with whom Defendant Highmark contracted to make the calls at issue.

On January 28, 2022 Defendant Cotiviti filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. [Dkt. 78.] On June 3, 2022, the Court denied this Motion. [Dkt. 90.]

On July 18, 2022, Plaintiff's counsel was retained by two additional individuals—Plaintiff Fisher and Plaintiff Sterling—whose allegations Plaintiffs contend are similar to Plaintiff Walker's. Notably, however, Plaintiff Fisher and Plaintiff Sterling received pre-recorded calls as part of different campaigns than Plaintiff Walker. This is significant because of arguments Defendants had made and intended to make concerning the propriety of Plaintiff Walker

2

representing persons who received calls as part of campaigns that did not result in calls to Plaintiff Walker, and about whether the calls to Plaintiff Walker fell under the "emergency purpose" or other exceptions. Plaintiffs Fisher and Sterling thus not only potentially brought in more calls and campaigns should Defendant's former argument be adopted, but some of the calls to Plaintiff Fisher and Sterling—such as survey calls—were, in Plaintiffs' view, less likely to qualify under the emergency purpose or other exceptions than other calls such as those to Plaintiff Walker.

While Plaintiff Fisher and Plaintiff Sterling were not formally added to this case until the preliminary approval stage, Defendants were aware of Plaintiff Fisher and Plaintiff Sterling's participation prior to the July 27 mediation, and Plaintiffs believe that their participation was vital to its success.

### B.  The Settlement

Shortly after the Court denied Defendant Cotiviti's Motion to Dismiss, the Parties agreed to participate in a private mediation with Terrence White of Upchurch Watson White & Max (the "Mediation"). The Mediation was held on July 27, 2022. With the help of Mr. White, the Parties were able to reach the Settlement Agreement.

As outlined at more detail in Plaintiff's Motion for Preliminary Approval, Dkt. 112, the Settlement Agreement requires Defendant to create a non-reversionary fund of $1,850,000, which will be used to provide cash awards to eligible claimants who file an Approved Claim, as well as cover all administrative costs, incentive awards, attorneys' fees and attorneys' costs. *Id.* at § 3.04. Each claimant who files an Approved Claim will receive a *pro rata* per-call amount based on the number of Eligible Calls made to that claimant. *Id.* §§ 8.01-8.04. Class Members will receive an award of approximately $70.69 per call at an assumed claims rate covering ten percent of Eligible

Calls (resulting in an average payout of over $1,300), after deducting the requested fees, costs, Plaintiffs' incentive awards, and the estimated costs of administration.

The Court preliminarily approved the Settlement Agreement and certified the Settlement Class on December 13, 2022. [Dkt. 116.] Per the schedule set in the Court's order, Plaintiffs hereby move for approval of the requested attorneys' fees, costs, and incentive awards.

## III.   DISCUSSION

### A.   <u>Legal Standard for Attorneys' Fees</u>

Courts generally apply two distinct methods in determining reasonable attorneys' fees pursuant to Fed. R. Civ. P. 23(h) depending upon the nature of the case: the percentage of the recovery method or the lodestar method. *In re Baby Products*, 708 F.3d 163, 176 (3d Cir. 2013); *In re Cendant Corp.*, 243 F.3d 722, 732 (3d Cir. 2001). "A district court has discretion to determine which type of case the settlement most closely resembles and which calculation method to apply." *Id.* "[T]he percentage-of-recovery method is generally favored in cases involving a common fund[.]" *Dungee v. Davison Design & Development Inc*, 674 F. App'x 153, 156 (3d Cir. 2017) (internal citations and quotations omitted); *see also Brown v. Rita's Water Ice Franchise Co., LLC*, 242 F. Supp. 3d 356, 360 (E.D. Pa. 2017) ("In common fund cases, the percentage-of-recovery method is preferred over the lodestar method for assessing attorneys fees.") (citing *In re Ins. Bokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009)).

The Settlement here is a common fund, as it "create[s] … a fund … to which others … have a claim." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55. F.3d 768, 820 n.39 (3d Cir. 1995). Accordingly, Plaintiffs ask that the Court apply the percentage-of-recovery method.

In determining the reasonableness of a fee using the percentage-of-recovery method, Courts consider the *Gunter* and *Prudential* factors:

4

(1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, . . . (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)). These "factors must each be evaluated separately and then collectively to determine a reasonable fee reflecting the particular circumstances of the case. Depending on the facts of the case, one factor may have more significance and relevance than others." *Brown*, 242 F. Supp. 3d at 360.

These factors are not exhaustive, and a district court should consider "any other factors that are useful and relevant with respect to the particular facts of the case." *In re Diet Drugs*, 582 F.3d at 541 n.34 (quoting *In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006)). These factors, which are not required to apply formulaically, should assist in "evaluat[ing] what class counsel actually did and how it benefitted the class." *In re Rite Aid Corp.*, 396 F.3d 294, 301 (3d Cir. 2005). Fees of one-third are "well within the range of reasonable fees, on a percentage basis, in the Third Circuit." *Vista Healthplan, Inc. v. Cephalonc, Inc.*, 2020 U.S. Dist. LEXIS 69614, *81 (E.D. Pa. Apr. 20, 2020).

**B.   Application of *Gunter* and *Prudential* Factors**

**1.   Size of the fund and number of beneficiaries**

The fund created is $1,850,000 and will benefit up to 7,403 persons. As discussed below, this will result in exceptional relief for Class Members when compared with other TCPA

5

settlements. Even at an unheard-of 100 percent claims rate, it would provide more per Class Member (approximately $130/person) after fees, costs, and service awards than many—if not most—other TCPA settlements. At a more realistic (and still high) claims rate of 10 percent,[1] the average Class Member will receive over $1,300. As this Court acknowledged in granting preliminary approval, the Settlement is more favorable than, and far exceeds, other TCPA settlements. *Walker v. Highmark BCBSD Health Options, Inc.*, 2022 U.S. Dist. LEXIS 225998, *10-12 (W.D.P.A. Dec. 13, 2022).[2] This supports approval of Class Counsel's fee request.

### 2.   Objections

Class Members have until March 10, 2023 to object. As of this Motion, no Class Member has objected. This supports approval of Class Counsel's fee request.[3]

### 3.   Skill and efficiency

The "skill and efficiency of the attorneys" factor is measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case, and the performance and quality of opposing counsel. *Kelly v. Business Information Group, Inc.*, No. CV 15-6668, 2019 WL 414915, at *17 (E.D. Pa. Feb. 1, 2019).

As discussed throughout, the quality of the result achieved is excellent. Anticipated

---

[1] *See, e.g. Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (citing evidence suggesting that consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"); *Larson v. Harman-Mgmt. Corp.*, 2019 U.S. Dist. LEXIS 219294, *20-21 (E.D. Cal. Dec. 18, 2019) (listing claims rate in various TCPA cases, all below 10 percent).

[2] *Compare with, e.g.*, *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d, 337, 345 (D.N.J. 2020) ($37.61 assuming a 10% claims rate); *Ott v. Mortg. Investors Corp. of Ohio, Inc.*, 2016 U.S. Dist. LEXIS 892, *3 (D. Or. Jan. 5, 2016) ($140.86 on a less than 1% claims rate);

[3] Class Counsel will update this section, as necessary, in the forthcoming Motion for Final Approval, should there be any objections.

recovery north of $1,300, even at a higher-than-usual claims rate of 10%, is almost unheard of in TCPA litigation.

Not only is the result obtained significant, but it was obtained in an exceptionally efficient manner. As seen in the following chart sampling other cases, Class Counsel obtained the result here in far fewer hours than others:

| Case | Per Claimant Recovery | Hours spent |
|------|----------------------|-------------|
| *Walker v. Highmark* | $1,300* (estimated10%) | 297 |
| *Couser v. Comenity Bank* 125 F. Supp. 3d 1034 (S.D. Cal. 2015) | $13.75[4] | 850.30 |
| *Gehrich v. Chase Bank* 316 F.R.D. 215 (N.D. Ill. 2016) | $52.50 | 2,323 |
| *Chinitz v. Intero Real Estate Servs.* 2022 U.S. Dist. LEXIS 196781 (N.D. Cal. Oct. 28, 2022) | $350 | 5,224.8 |
| *Johnson v. Moss Bros. Auto Group. Inc.* (C.D. Cal. June 24, 2022) | $460[5] | 400 |

Of the TCPA class actions settlements surveyed, this is the only one Class Counsel found in which the estimated per claimant recovery comes anywhere close to $4 per hour spent on the case. While every case is different, this efficiency is notable.

This strong and efficient result was obtained despite vigorous opposition from experienced and capable counsel at Reed Smith and Sheppard Mullin—two of the most highly regarded law firms in the nation.

---

[4] The motion for preliminary approval listed this at $50, in error. The claims rate in *Couser* was 7.7% and resulted in $13.75 per class member.

[5] *Johnson* had no claims process, and each class member was sent $46. For an apples-to-apples comparison, Plaintiff multiplied this number by 10 to show what a 10% claims rate would have looked like there. Or, done in the reverse, a 100% claims rate here would result in an average of $130 per member.

Furthermore, while it is true that TCPA cases are typically "neither challenging nor complex", *Brown*, 242 F. Supp. 3d at 365, to the extent any type of TCPA class action can be considered an exception to that rule, it is "wrong number" class actions like that here. While class certification in wrong number TCPA cases is doable, it is vigorously contested, expensive, and, on occasion, denied. *See Head v. Citibank, N.A.*, 340 F.R.D. 145, 152-54 (D. Ariz. 2022) (noting the split of decisions on certifying a wrong number class but certifying the proposed wrong number class). Certification in such cases almost always necessitates dueling experts on issues such as ascertainability (i.e. whether there is a class-wide way to identify persons who were wrong numbers), which is already a tougher issue in the Third Circuit than in most other circuits.

In addition, this case presented a merits issue that, as far as Plaintiffs are aware, would have been an issue of first impression in this Circuit. Specifically, Defendants' primary defense to liability—that most, if not all, of the calls are exempt from the TCPA's coverage as "emergency purpose" calls—has no on-point Third Circuit precedent. If Defendants prevailed on this argument, the value of the case would approach $0. Courts elsewhere have decided this question with conflicting results. *Compare, e.g. Coleman v. Rite Aid of Georgia, Inc.*, 284 F. Supp. 3d 1343, 1346-47 (N.D. Ga. 2018) (concluding the emergency purpose exception cannot apply where the recipient has informed the caller it had the wrong number or the calls were unwanted) *with Roberts v. Medco Health Solutions*, 2016 U.S. Dist. LEXIS 97177, *3 (E.D. Mo. July 26, 2016) (applying emergency purpose exception to wrong number calls).

Plaintiffs and Class Counsel were able to navigate these difficulties and reach a strong and efficient settlement in large part due to Class Counsel's experience in consumer class actions and TCPA litigation in particular. *See* Glapion Decl. at ¶¶ 1-9. Since 2015, Class Counsel has been appointed co-lead counsel in *Willis et al. v. IHeartMedia, Inc.*, Case No. 16-CH-02455 (Cook

County, Feb. 19, 2016), a TCPA class action in which the court approved an $8.5 million non-reversionary class action settlement, which was successfully administered. In 2017, Attorney Glapion was appointed as sole lead counsel in *Allard et al. v. SCI Direct, Inc.*, a TCPA class action in which the Court approved a $15 million non-reversionary class action settlement, which was successfully administered. Case No. 17-cv-4692 (N.D. Illinois). In 2018, Attorney Glapion was also appointed co-lead counsel in *Griffith v. ContextMedia, Inc.*, Case No. 16-cv-2900 (N.D. Illinois), a TCPA class action in which the Court approved a $2.9 million non-reversionary settlement, which was successfully administered. Attorney Glapion has recovered over $30 million for consumers across more than one hundred individual and class TCPA cases. *See* Glapion Decl. at ¶¶ 1-9. Using this experience and knowledge, Class Counsel investigated Defendants' practices, brought claims against Defendants, engaged in significant discovery, prevailed on several dispositive motions and discovery disputes, and helped achieve an early resolution that will provide relief to Class Members on the high end of TCPA settlements. *See* Glapion Decl. ¶¶ 10-24.

### 4. Complexity and duration

The complexity and duration of the litigation factor is intended to capture "the probable costs, in both time and money, of continued litigation." *Stevens v. SEI Investments Co.*, 2020 U.S. Dist. LEXIS 35471, *33 (E.D. Pa. Feb. 28, 2020) (citing *In re General Motors*, 55 F.3d at 812).

As discussed above, the difficult issues surrounding the forthcoming Motion for Class Certification, and the first-impression "emergency purpose" argument, buck the general rule that TCPA cases are "neither challenging nor complex." *Brown*, 242 F. Supp. 3d at 365.

Regarding duration, as the Court has previously noted, "class counsel has litigated this case for almost two years and engaged in extensive motion practice and discovery[.]" *Walker*, 2022

U.S. Dist. LEXIS 225998 at *11 (W.D.P.A. Dec. 13, 2022). The Parties fully briefed (and the Court ruled upon) two Motions to Dismiss and one Motion to Remand. This matter did not resolve until after the Court's ruling on the second of these Motions to Dismiss.

The Parties also engaged in significant amounts of discovery, including thousands of pages of documents showing the call scripts and purposes for all of Defendants' calling campaigns, Defendants' policies and procedures for honoring and documenting do-not-call requests, and a list of all calls and dispositions and their meaning (allowing Plaintiffs to determine which dispositions were indicative of a wrong number call). This discovery also included the production and review of a voluminous calls database, which necessitated hiring third-party database experts to parse and review. Glapion Decl., ¶ 14.

Accordingly, this factor weighs in favor of approving Class Counsel's fee request.

### 5.  Risk of non-payment

Risk of nonpayment factor militates in favor of approval because Class Counsel worked on a contingent basis in pursuing difficult and risky litigation. "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp.*, 2012 U.S. Dist. LEXIS 75213, at *19 (D.N.J. 2012); *see also Stevens*, 2020 U.S. Dist. LEXIS 35471, at *34. Class Counsel has litigated this case without pay from the inception and has shouldered the risk, through multiple dispositive motions, that the litigation would yield no recovery. Glapion Decl., ¶ 24.

### 6.  Amount of time devoted to the case

Class Counsel (and co-Counsel) devoted a substantial amount of time to this case. Class Counsel conducted a thorough investigation and engaged in significant and meaningful motion practice and discovery to come to an understanding of the scope of the potential Class claims and

the potential damages at issue. Class Counsel successfully opposed two dispositive Motions and prevailed on several discovery disputes. Class Counsel then invested the necessary time in the mediation process to reach a resolution with Defendants and avoid the additional costs and risks of proceeding with class certification, additional dispositive motions, trial, and possible appeals. This factor weighs in favor of approving the requested fee. *Kelly v. Business Info. Grp., Inc.*, 2019 U.S. Dist. LEXIS 16288, at *51-52 (E.D. Pa. Jan. 31, 2019). As discussed below, this amounted to approximately 300 hours of litigation.

### 7. Awards in similar cases

The fee award requested in this case is in line with awards in similar cases in terms of the percentage of the total recovery. "While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund." *Stevens*, 2020 U.S. Dist. LEXIS 35471, at *35 (citing *In re General Motors*, 55 F.3d at 822); *see also Kelly*, 2019 U.S. Dist. LEXIS 16288, at *52. The Third Circuit has previously affirmed, over objection, an attorneys' fee award of one-third in a TCPA case that had a reverter provision (which is not present here). *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883-84 (3d Cir. 2016).

While some courts have awarded less in TCPA cases, especially "before there was any motion practice or merits discovery", *Ward v. Flagship Credit Acceptance LLC*, 2020 U.S. Dist. LEXIS 25612, *63 (E.D. Pa. Feb. 13, 2020), such cases are inapposite. Discovery and motion practice here was significant and contested, and without success throughout, there would be no settlement, let alone one as strong as that here. The most analogous Third Circuit case is *Shelton v. Agentra*. 2021 U.S. Dist. LEXIS 144659 (W.D. Pa. Aug. 3, 2021) (Dodge, M.J.) There, the

11

Court approved a fee award of one-third of the common fund in a TCPA case that settled prior to class certification, but after "extensive discovery related to class certification" and "multiple discovery motions … which resulted in the production of thousands of pages of documents." *Id.* at *3. The case, which was filed in May 2018, settled in April 2020 for $275,000.00 to be distributed *pro rata* to a class of 19,683. *Id.* at *8. Approximately 2,085 members made claims (10.5% claims rate), and these claimants received between $48.39 and $145.17. *Id.* at *18. The instant case was litigated for a similar amount of time, resolved at a similar stage, and obtained a stronger result.

### 8.   Value attributable to Class Counsel

The value of the benefits provided by the settlement are the result of Class Counsel's and co-Counsel's efforts. No government agencies or other persons or groups investigated or pursued the action or contributed to the settlement. This factor supports approval.

### 9.   Private fee negotiations

The requested fee, as a percentage of the total recovery, is typical of contingency fee agreements, which typically provide for a fee of 30% to 40%.[6] *See, e.g., In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (citing cases). This factor supports approval.

### 10.   Innovative Terms

The Settlement Agreement is relatively straightforward in its terms. The most innovative aspect of the Settlement is in how the class was defined, allowing the Parties to identify Class Members who had indicated to Defendants that they may have had the wrong number. This factor

---

[6] Counsel's agreement with Plaintiffs does not specify a percentage, instead providing that "[w]e may ask the other party to pay attorneys' fees and costs", and specifying that "we will seek an amount equal to the greater of the [lodestar] [or] our actual costs plus one-third of the full amount of any settlement or judgment". Glapion Decl., ¶ 24.

is neutral. *See Stevens*, 2020 U.S. Dist. LEXIS 35471, at *36.

     **C.**  **Lodestar Crosscheck**

     A lodestar cross-check is "suggested", but not mandatory. *See, e.g.*, *Tumpa v. IOC-PA, LLC*, 2021 U.S. Dist. LEXIS 2806, *32 (W.D. Pa. Jan. 7, 2021) (Haines, J.); *McDermid v. inovio Pharms., Inc.*, 2023 U.S. Dist. LEXIS 8200, *37 (E.D. Pa. Jan. 18, 2023); *Moore v. GMAC Mortg.*, 2014 U.S. Dist. LEXIS 181432, *5-6 (E.D. Pa. Sept. 19, 2014); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 94 (D.N.J. 2001) (use of lodestar cross check is not mandatory). Indeed, the final report of a Third Circuit Task Force on the Selection of Class Counsel stated:

> The 1985 Task Force made a compelling case for rejecting the lodestar approach in common fund cases. We see nothing that has changed in the interim to diminish the power of the arguments made in 1985. The lodestar remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class. Moreover, use of the lodestar may result in undercompensation of talented attorneys. Experienced practitioners know that a highly qualified and dedicated attorney may do more for a class in an hour than another attorney could do in ten. The lodestar can end up prejudicing lawyers who are more effective with a lesser expenditure of time.

> Given the substantial problems with the lodestar approach generally, the Task Force is highly skeptical about the use of the lodestar even as a cross-check when awarding a percentage of the common fund.

> *In re Third Circuit Task Force on the Selection of Class Counsel*, 208 F.R.D. 340, 2002

U.S. App. LEXIS 30242, *149-50 (3d Cir. 2002). Given the strong and efficient result obtained here, Plaintiffs do not believe a lodestar cross-check would be beneficial.

     Nevertheless, should the Court choose to conduct such a crosscheck, it is discussed below. The Third Circuit has stated that in conducting such a crosscheck, a court need not engage "mathematical precision nor bean-counting." *In re Rite Aid Corp.*, 396 F.3d at 306. The Court "need not" receive or "review actual billing records" when conducting this analysis. *Id*. at 307. Summaries are sufficient. *Id.* The cross-check, if conducted, is "only meant to be a cursory

overview." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 311 (E.D. Pa. 2003).

### 1. Class Counsel's Hourly Rates Are Reasonable

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Blum v. Stenson,* 465 U.S. 886, 895-96 n.11 (1984). Courts "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990). A reasonable hourly rate is the prevailing market rate for the essential character and complexity of the legal services rendered. *Planned Parenthood of Central New Jersey v. The Attorney General of the State of New Jersey,* 297 F.3d 253, 265 n. 5 (3d Cir. 2002).

Class Counsel herein requests $500 per hour for all hours worked by Class Counsel and co-Counsel. Class Counsel specifically does not have any recent published decisions on his hourly rate, as the bulk of his work is contingency fee cases which either settle individually (not requiring court approval), or award from a common fund in a class-wide settlement. Class Counsel's last court-approved hourly rate was $350/hour in 2015. *Andersen v. Riverwalk Holdings LTD*, 15-cv-621, Dkt. 8 (E.D. Wisc. Dec. 3, 2015). At the time, Class Counsel had been practicing for only three years, had his own firm for less than one, and had no track record to speak of in terms of results.

Since then, Class Counsel has litigated more than one hundred TCPA cases, including five class action settlements (this one, another currently pending, and three that have been finally approved and successfully administered). This includes a settlement which was, per member, one of the largest TCPA settlements to date. Glapion Decl., ¶¶ 1-9. Class Counsel's track record of

excellence, especially in the TCPA context, justifies the $500 per hour rate requested herein when considered in conjunction with the strength of the relief obtained here.

Attorney Pietz, while not requesting to be Class Counsel here, nevertheless spent significant hours on the matter. Attorney Pietz involvement in this matter was invaluable, both in terms of the nuts-and-bolts of litigating in the Western District of Pennsylvania and in terms of strategy. Attorney Pietz has been practicing for 32 years within the community of consumer class action attorneys in Pittsburgh and on a nationwide basis.[7] *See* Declaration of James M. Pietz.

These proposed hourly rates are commensurate with rates that have recently been submitted and used in this District, and are below rates found to be excessive (but still not preclusive of approval) in the lodestar cross-check context. *See Kaymark v. Udren Law Offices, P.C.*, 2019 U.S. Dist. LEXIS 224703, *27-28 (W.D. Pa. Feb. 5, 2019) (awarding $500/hour to an attorney with eight years of practice experience at the time); *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 715, 719 (W.D. Pa. 2015) (finding excessive the $949.95 hourly rate derived from dividing the requested fee divided by the hours worked, but approving the fee request anyway and acknowledging the $525 rate for partners submitted in connection with the lodestar crosscheck is reasonable).

### 2. Class Counsel's Time Was Reasonably Expended

Class Counsel and co-counsel have spent approximately 297 hours on this case since its

---

[7] In a contested fee proceeding, *Vincent v, Wolpoff,* No. 08-423 (W.D. Pa.), Judge Ambrose adopted (ret.) Magistrate Benson's arbitrator award finding that Mr. Pietz's hourly rate as of 2009 was appropriately set at $400 for the community of lawyers doing consumer class actions in Pittsburgh. (08-423 at Doc. No. 62 and 62-1). In 2014, an attorney fee expert provided his analysis that Mr. Pietz's hourly rate as of 2014 was appropriately set in the range of $ 475 to $525. *See Reardon v. ClosetMaid,* 08-1730 MRK at Doc. No. 213-2, Ex B Opinion of Abraham C. Reich, Esq. Thus, as of 2023 Mr. Pietz's hourly rate is properly set higher, but for purposes of the court's cross-check of the lodestar, the rate has been set at $500 to equate that of Lead Counsel.

filing to the date of this Motion. Generally speaking, these can be broken down as approximately 121.5 hours on complaint and motion practice (including accompanying motion and case strategy research), 26.7 hours on communications (e.g. with clients, opposing counsel, co-counsel, and experts), 78 hours on discovery, and 70.8 hours on the Settlement and Settlement-adjacent process (e.g. travel to and from, and participation in, the mediation itself, as well as drafting accompanying documents and motions). Glapion Decl., ¶¶ 25-26; Pietz Decl., ¶¶ 38-39. These hours are in line with the nature of this case and the record before the court.

### 3. The Multiplier is Reasonable

The Third Circuit has recognized that when performing the lodestar analysis to cross-check the reasonableness of a percentage of the recovery award, multipliers to the lodestar are often appropriate to represent "the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Bredbenner v. Liberty Travel, Inc.*, 09-905, 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745, at *21 (D. N.J. April 8, 2011) (citations omitted). "Courts in the Third Circuit have approved lodestar multipliers at least as high as 6.96." *Demaria v. Horizon Healthcare Servs.*, 2016 U.S. Dist. LEXIS 143941, *12-13 (D.N.J. Oct. 18, 2016) (approving a 4.3 multiplier) (citing *In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp. 2d 587, 590 (E.D. Pa. 2005). Multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Id.* (citing *In re Prudential*, 148 F.3d at 341).

The requested fees here amount to a multiplier of 4.15 on the total lodestar.[8] Plaintiffs acknowledge that this is on the higher end of multipliers, but believe it is justified for two primary reasons.

---

[8] Even using Plaintiff's $350/hour rate from seven years ago, the multiplier is a high—but not unapprovable—5.93.

First, the result is unquestionably excellent. As discussed previously, of the sample of TCPA class actions settlements surveyed, this is the only one Class Counsel found in which the estimated per claimant recovery (on an assumed 10 percent claims rate) comes anywhere close to (let alone exceeds) $4 per hour spent on the case (i.e. $1300 divided by 297 hours).

Second, reducing the fee here based on the multiplier would penalize efficiency. *See, e.g.* *In re Wachovia Corp. ERISA Litig.*, 2011 U.S. Dist. LEXIS 123109, *15 (W.D.N.C. Oct. 24, 2011) (noting that, when compared to the lodestar calculation, the percentage method "has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases"); *In re Skelaxin Antitrust Litig.*, 2014 U.S. Dist. LEXIS 91661, *4 (E.D. Tenn. June 30, 2014) (same). The case here settled when it was best to settle for the class, *not* necessarily when it was best for the instant fee application. *See Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (noting that it "matters little to the class how much the attorney spends in time or money to reach a successful result."). This is how it should be. Getting this case to a fully briefed Motion for Class Certification would have taken dozens, if not hundreds, of additional hours, only to obtain relief similar (and potentially worse) than the relief obtained here. In Class Counsel's experience, such continued litigation would only benefit the attorneys in this matter. *See In re Third Circuit Task Force*, 2002 U.S. App. LEXIS 30242, at *149 ("[The lodestar method] … encourages counsel to run up the bill, expending hours that are of no benefit to the class."); *see also In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 534 (E.D. Pa. 1990) ("[I]t would be the height of folly to penalize an efficient attorney for settling a case on the ground that less total hours were expended in the litigation.").

Accordingly, Plaintiffs respectfully request that the multiplier not dissuade the Court from approving the requested fee.

### D.  **Class Counsel's Costs are Reasonable.**

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224-25 (3d Cir. 1995). Of the $21,561.52 in expenses, $5,467.09 was spent on mediation (including the mediation fee, $564.77 for a round trip flight, and $735.65 for lodging); $15,312.75 was spent on third-party experts, consultants, and independent contractors; and the remaining $781.68 was spent on filing fees, transcripts, and similar administrative items. Glapion Decl., 27-29. These expenses were reasonable, necessary, and appropriate for the prosecution of this action and Plaintiffs respectfully ask that they be approved.

### E.  **The Service Awards to Plaintiffs Should Be Approved.**

Service awards are both permitted and routinely approved in the Third Circuit. *See, e.g. Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333, n.65 (3d Cir. 2011) (en banc) (rejecting an objection to incentive awards, and noting such awards are "not uncommon in class action litigation … particularly where … a common fund has been created for the benefit of the entire class."). A $10,000 service award has been found to be fair and reasonable in the TCPA context in the Third Circuit. *See, e.g. Landsman & Funk, P.C.*, 639 Fed Appx. at 882; *Brown*, 242 F. Supp. 3d at 372.

The awards are warranted here. Plaintiff Walker has worked with Class Counsel to advance the case for nearly two years and has been extremely cooperative and communicative. Plaintiff Walker timely responded to Defendants' discovery requests and remained involved at every step of the way. He remained dedicated to the Class and at no point sought to settle individually, even though it is possible he could have obtained a better individual settlement for himself (even taking into account the requested service award) had he sought to leverage the litigation primarily for his

own personal gain. He provided valuable and responsive input and feedback into the case, and his contribution to the litigation served the interest of the Class members. Glapion Decl., ¶¶ 32-35. At no point was Plaintiff Walker promised or offered any sort of incentive award such as that requested here. *Id.* at ¶ 36.

While Plaintiffs Fisher and Sterling were involved in this case for a much shorter period, their participation was vital. One of Defendants' primary expected defenses was that the calls to Plaintiff Walker were made for emergency purposes, in which case they would potentially be exempt from the TCPA. While the Parties disagreed on the viability of this argument, it was not without some support. If all of Plaintiff Walker's claims were made for emergency purposes, then Plaintiff Walker could not proceed at all, let alone represent a class. Plaintiff Fisher and Plaintiff Sterling, however, received calls as part of campaigns for which Defendants' emergency purpose argument would arguably be more attenuated, such as satisfaction survey calls and reward program calls. As such, their presence in this case in the weeks leading up to the mediation helped break through what would certainly have been a roadblock during settlement negotiations and either outright precluded settlement or led to a much weaker settlement. It is Plaintiffs' counsel's belief that this matter would not have resolved—or would not have resolved as favorably—without the participation of Plaintiffs Fisher and Sterling. Glapion Decl., ¶¶ 37-45.

Plaintiff Fisher and Plaintiff Sterling, like Plaintiff Walker, at no point expressed a desire to settle individually. They asked questions and were invested in the case from the beginning. They were and remain responsive to requests for information from counsel and have proved to be valuable additions to this case. At no point were Plaintiffs Fisher and Sterling promised or offered any sort of incentive award such as that requested here. *Id.* at ¶ 46.

**IV.    CONCLUSION**

Class Counsel respectfully requests that the Court award Class Counsel $616,666.67 in fees and $21,161.52 in costs. Class Counsel further requests that the Court confirm its preliminary approval of service awards of $10,000 to Plaintiff Walker and $2,500 to Plaintiffs Fisher and Sterling.

Dated: January 23, 2023

*/s/ Jeremy M. Glapion*
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com

20