**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTOPHER JAMES WALKER, KIM STERLING, and ERNIE FISHER** on behalf of themselves and all others similarly situated, | Civil Case No.: 20-cv-1975<br>Hon. Christy Criswell Wiegand |
| **Plaintiff,** | |
| v. | |
| **HIGHMARK BCBSD HEALTH OPTIONS, INC.; COTIVITI, INC.** | |
| **Defendant.** | |

**Declaration of Jeremy M. Glapion In Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards**

I, Jeremy M. Glapion, declare as follows:

1.      I founded Glapion Law Firm in May 2015 and I have been, and to this day remain, its sole employee.

2.      Glapion Law Firm is a plaintiff-side consumer protection firm with a focus on cases alleging violations of the Telephone Consumer Protection Act and Fair Debt Collection Practices Act.

3.      Since May 2015, I have recovered over $30 million for consumers across more than 100 individual and class TCPA cases.

4.      I have been appointed lead counsel in three separate TCPA class actions:

    a.   *Willis et al. v. IHeartMedia, Inc.*, Case No. 16-CV-02455 (Cook County, Feb. 19, 2016) (co-lead counsel in $8.5m class action settlement involving allegations that defendant sent text message advertisements without consent);

    b.   *Allard et al. v. SCI Direct, Inc.*, Case No. 16-cv-01033 (M.D. Tenn. 2016) (sole lead counsel in certified TCPA class action alleging defendant made prerecorded telemarketing calls without consent and did not maintain adequate do-not-call policies and procedures; resulted in successfully administered $15m settlement).

    c.   *Griffith v. ContextMedia Health, LLC*, 16-cv-2900 (N.D. Ill) (co-lead counsel in certified TCPA class action alleging defendant sent text messages after being asked to stop, resulting in successfully administered $2.9m TCPA class action and one of the largest per-member recoveries in the history of the TCPA at nearly $7,500 per person)

5.      I am currently litigating five other TCPA putative class actions, at various stages ranging from initial pleadings to preparing settlement documents.

6.      I have also been an invited panelist on a TCPA panel at the PCI Northeast General Counsel Conference.

7.      Prior to founding Glapion Law Firm, I was an attorney at the law firm of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") in New York (2013-2015), a law clerk to The Honorable Freda L. Wolfson (D.N.J.) (2013), and an associate at Gibson Dunn & Crutcher (2012-2013). I am a 2012 graduate of Harvard Law School, and a 2009 graduate of Louisiana State University.

8.      While at LCHB, I was one of the primary associates on several high-profile consumer-protection matters, including TCPA class cases such as *Henrichs v. Wells Fargo Bank, N.A.*, Case No. 13-CV-05434 (N.D. Cal.); *Ossola v. American Express Co.*, Case No. 13-cv-04836 (N.D. Ill.); and *Balschmiter v. TD Auto Finance, LLC*, Case No. 13-cv-01186 (E.D. Wisc.).

9.      My experience in the matters listed above, as well as my knowledge of the TCPA gained through my handling numerous TCPA actions (both class and individual), has allowed me to develop the skills to successfully and capably manage the legal, factual, and procedural issues that accompany TCPA class actions, and to evaluate the merits of this case and the submitted settlement.

**Litigation**

10.     From the outset of this case, the litigation was difficult and contentious, and required significant discovery and the Court to resolve numerous discovery disputes and several dispositive motions.

11.     Specifically, Defendant Highmark Health Options moved to dismiss, which the Court denied.

12.     Plaintiff moved to remand, which the Court denied.

13.     Defendant Cotiviti, Inc. moved to dismiss, which the Court denied.

14.     Plaintiffs conducted significant discovery, including 60 requests for production and 19 interrogatories, which necessitated the review and curation of thousands of pages of documents, and necessitated hiring database and data analysis support teams.

15.     The parties also attended an all-day mediation before Terry White on July 27, 2022 in an effort to resolve the case, which did successfully result in a settlement agreement in principle.

16.     Though I remain confident in the strength of the claims, there remained serious risks, both legal and practical, that made settlement in the best interests of the class.

17.     First, Defendants raised privately and in filings several complete defenses to liability, including the contours of the emergency purpose defense vis-à-vis wrong number calls, which would be an issue of first impression in this circuit. Defendants also argued that Plaintiff Walker (and by extension, later-added Plaintiffs Sterling and Fisher) could only represent persons who received calls as part of the same campaigns they did, which would significantly limit the number of actionable campaigns.

18.     Second, while wrong number classes are certifiable, they are more vigorously contested in good-faith than a standard TCPA settlement, and there is well-reasoned case law supporting both certification and denial. There are real risks of class certification being denied in full or in part, which would result in the Settlement Class (or a significant portion of the Settlement Class) receiving no relief.

19.     Third, even if Plaintiffs prevailed on every issue, motion, and trial, this Settlement allows for real relief much sooner than would come in its absence. Trial is, at best, a year away, and any subsequent appeal would add years. Guaranteeing a sizable Settlement to the Class now far outweighs the potential benefit of proceeding to trial and verdict.

20.     Fourth, the TCPA is under siege constantly, and I am aware of more than a few cases—including at least one of my own—in which a promising case had its value reduced to nothing after years of litigation because of an intervening Supreme or Appellate Court decision in a different case. This risk is unquantifiable, but it is real.

21.     Considering these risks, and compared to other TCPA settlements nationwide, I strongly believe this Settlement is not only fair, but exceptional. Eligible claimants will likely receive *per call* what many TCPA class settlements pay *per member*. It is a near certainty that some Class Members will see payments north of $1,400. In a possible (but high) claims rate where ten percent of calls are claimed, claimants would receive an estimated $74.85 per call (with the average class member receiving nearly $1450), *after* estimated costs and sought attorneys' fees, costs, and service awards.

22.     Even in a hypothetical situation where 25 percent of calls are claimed (which would be unheard of in a TCPA settlement), total recovery for class members would be $29.94 for one call and more than $578 for the average class member.

23.     This settlement is exceptional relative to other TCPA settlements, gets real money into the hands of class members sooner rather than later, and should help deter future wrongful conduct by Defendants and/or others.

24.     Had Plaintiffs lost this case, I, and Plaintiffs, would have received nothing. I would have received no fees or cost reimbursement, as my representation agreements with Plaintiffs limit my recovery to an amount awarded by the Court or agreed to by defendant.

**Time**

25.     I have spent 259.6 hours on this case since its filing to the date of this Motion.

26.     Generally speaking, these can be broken down as approximately 97.2 hours on complaint and motion practice (including accompanying motion and case strategy research), 26.7 hours on communications (e.g. with clients, opposing counsel, co-counsel, and experts), 69.8 hours on discovery, and 65.9 hours on the Settlement and Settlement-adjacent process (e.g. the mediation itself as well as drafting accompanying documents and motions).

**Costs**

27.     My co-counsel and I spent $21,561.52 litigating this matter. These include $5,467.09 related to the mediation ($4,166.67 fee; $564.77 flight; and $735.65 for lodging); $15,312.75 in experts (e.g. in preparation for class certification) and consultant/independent contractor (e.g. database engineers) expenses, and the remainder on filing fees, transcripts, and similar "administrative" work.

28.     The travel costs reflect economy airfare and standard lodging in Orlando. Class Counsel has not requested reimbursement for meal or ground-transportation expenses.

29.     I was the lead counsel on this matter, and no other attorneys besides local counsel, Mr. Jim Pietz, provided any assistance, financially, strategically, or in contributing their time.

**Plaintiffs**

30.     All Plaintiffs have spent a considerable amount of time and effort seeing this case through to its conclusion.

31.     This exceptional result could not have been achieved without the participation of all three current Plaintiffs.

32.     Plaintiff Walker initiated this case and remained attentive and engaged from day one.

33.     Plaintiff Walker timely responded to Defendants' discovery requests, asked pertinent and insightful questions throughout the case (including about the instant settlement), and remained available as needed to assist in the prosecution of all aspects of this case.

34.     At no point did Plaintiff Walker place his own interests above those of the class.

35.     Plaintiff Walker was, by any measure, an ideal class representative Plaintiff.

36.     At no point was Plaintiff Walker offered or promised a service or incentive award for his service to the Class.

37.     While Plaintiffs Fisher and Sterling were involved in this case for a much shorter period, their participation was vital.

38.     One of Defendants' primary expected defenses was that the calls to Plaintiff Walker were made for emergency purposes, in which case they would potentially be exempt from the TCPA.

39.     While the Parties disagreed on the viability of this argument, it was not without some support.

40.     If all of Plaintiff Walker's claims were made for emergency purposes, then Plaintiff Walker could not proceed, nor could he represent a class.

41.     Plaintiff Fisher and Plaintiff Sterling, however, received calls as part of campaigns for which Defendants' emergency purpose argument would arguably be more attenuated, such as satisfaction survey calls and reward program calls.

42.     As such, it is my belief that their presence in this case in the weeks leading up to the mediation helped break through what would certainly have been a roadblock during settlement negotiations.

43.     It is my belief that their participation contributed significantly to the excellent value obtained at the mediation.

44.     It is my belief that this matter would not have resolved—or would not have resolved as favorably—without the participation of Plaintiffs Fisher and Sterling.

45.     While their involvement was short in duration, they at no point expressed a desire to settle individually or place the interests of themselves above the class. They asked questions and were invested in the case from the beginning. They were and remain responsive to requests for information from counsel.

46.     At no point were Plaintiffs Fisher or Sterling offered or promised a service or incentive award for his service to the Class.

47.     I would have no issues confidently proceeding with any of the Plaintiffs, individually or collectively, should this case not have resolved.

I declare under penalty of perjury under the laws of the State of Pennsylvania that the foregoing is true and correct.

Executed on this 23rd day of January, 2023, at Manasquan, NJ.

*/s/ Jeremy M. Glapion*_____
Jeremy M. Glapion